[Civ. No. 50021. First Dist., Div. Four. Oct. 6, 1981.]

SALMON TROLLERS MARKETING ASSOCIATION, INC.,
et al., Plaintiffs and Respondents, v.
E. C. FULLERTON, as Director, etc., Defendant and Appellant.

292

294

COUNSEL

George Deukmejian, Attorney General, R. H. Connett, Assistant Attorney General, and Denis D. Smaage, Deputy Attorney General, for Defendant and Appellant.

James L. Larson for Plaintiffs and Respondents.

OPINION

McCULLUM, J.*—This is an appeal by the Director of Fish and Game of the State of California, E. C. Fullerton (Director), from a judgment granting a writ of mandate and an injunction, issued by the Superior Court of Mendocino County in favor of Salmon Trollers Marketing Association, Inc., which consists of commercial salmon fishermen licensed to fish in the territorial waters of California. The Director had closed the commercial salmon fishing season for short terms during 1980, by emergency regulations adopted upon the authority of Fish and Game Code, section 7652. The trial court invalidated the emergency closures on the ground that section 7652 was an unconstitutional delegation of legislative power to the Director.

For the reasons set forth, we find that section 7652 of the California Fish and Game Code is valid and constitutional as enacted and applied. Therefore we reverse.

In April 1976, Congress enacted the Fishery Conservation and Management Act of 1976 (16 U.S.C. § 1801 et seq.) to conserve and manage fishery resources in a "fishery conservation zone" extending from 3 miles offshore to 200 miles offshore. The Secretary of Commerce was authorized to adopt regulations based on "fishery management plans" to be developed by regional "fishery management councils." The regional council for the area off the coast of Washington, Oregon, and California is the Pacific Fishery Management Council composed of 13 members of whom 3 (including the Director) are from California.[1] Cali-

---

*Assigned by the Chairperson of the Judicial Council.

[1]Included in the federal·act is the following provision with respect to state jurisdiction: "(a) In general.—Except as provided in subsection (b) of this section, nothing in

fornia's "state ... boundaries" include, along its Pacific shore, a zone extending three miles seaward. (*People* v. *Weeren* (1980) 26 Cal.3d 654, 660-666 [163 Cal.Rptr. 255, 607 P.2d 1279].)

In September 1976, the California Legislature added to the Fish and Game Code a new article, beginning with section 7650, entitled "Federal Regulation." (Stats. 1976, ch. 1160.)[2]

this chapter shall be construed as extending or diminishing the jurisdiction or authority of any State within its boundaries. No State may directly or indirectly regulate any fishing which is engaged in by any fishing vessel outside its boundaries, unless such vessel is registered under the laws of such State. [¶] (b) Exception.—(1) If the Secretary finds, after notice and an opportunity for a hearing in accordance with section 554 of title 5, that—[¶] (A) the fishing in a fishery, which is covered by a fishery management plan implemented under this chapter, is engaged in predominately within the fishery conservation zone and beyond such zone; and [¶] (B) any State has taken any action, or omitted to take any action, the results of which will substantially and adversely affect the carrying out of such fishery management plan; [¶] the Secretary shall promptly notify such State and the appropriate Council of such finding and of his intention to regulate the applicable fishery within the boundaries of such State (other than its internal waters), pursuant to such fishery management plan and the regulations promulgated to implement such plan. [¶] (2) If the Secretary, pursuant to this subsection, assumes responsibility for the regulation of any fishery, the State involved may at any time thereafter apply to the Secretary for reinstatement of its authority over such fishery. If the Secretary finds that the reasons for which he assumed such regulation no longer prevail, he shall promptly terminate such regulation." (16 U.S.C. § 1856.)

[2]The article reads in full as follows: "7650. As used in this article: [¶] (a) 'Act' means the Federal Fishery Conservation and Management Act of 1976 (16 U.S.C. 1801 et seq.). [¶] (b) 'Council' means the Pacific Fishery Management Council established pursuant to the act. [¶] (c) 'Secretary' means the Secretary of Commerce of the federal government. [¶] 7651. The director shall formulate such fishery management plan or plans as are necessary to meet the needs of the council in preparing a fishery management plan, or amendment thereto. [¶] 7652. Upon the approval of the secretary of a fishery management plan, or amendment thereto, prepared by the council pursuant to the act or a plan prepared by the secretary, the director may do the following to conform state law or regulations of the commission to the fishery management plan, or amendment thereto, of the council or the secretary to avoid a substantial and adverse effect on such plan by such state law or such regulations as necessary to continue state jurisdiction pursuant to Section 1856 of the act: [¶] (a) Adopt regulations that would make inoperative for up to 180 days any statute or regulation of the commission including, but not limited to, statutes or regulations regulating bag limits, methods of take, and seasons for taking of fish for commercial purposes. [¶] Any regulation adopted by the director pursuant to this subdivision shall specify the particular statute or regulation of the commission to be inoperative. [¶] (b) Adopt regulations effective for up to 180 days governing phases of the taking of fish for commercial purposes which are not presently regulated by statute or regulation of the commission. [¶] (c) Adopt regulations effective for up to 180 days governing phases of the taking of fish for commercial purposes which are presently regulated by statute or regulation of the commission, only if such statutes or regulations are made inoperative first pursuant to subdivision (a) for the effective period of the regulations adopted by the director. [¶] 7653. Upon the adoption of any regulations pursuant to Section 7652, the director shall

In 1977, 1978, and 1979 the Department of Commerce regulated the salmon fishery in the Pacific Coast fishery conservation zone on the basis of a fishery management plan adopted and thereafter from time to time amended by the Pacific Fishery Management Council. (45 Fed. Reg. 29250 (May 1, 1980).) The 1979 regulations imposed "more restrictive management measures" in light of a perceived salmon shortage. For 1980 the Pacific Fishery Management Council proposed even more restrictive amendments on the basis of findings that "many of the [salmon] stocks continue to be depressed as they were in 1979 and that their future productivity will be in serious jeopardy if ocean harvests are not reduced." On April 29, 1980, the Department of Commerce enacted the more restrictive regulations on an emergency basis in light of "the critical needs for reductions in the ocean harvests of these salmon stocks." (*Id.*, at pp. 29252-29253.)

At all relevant times California's statutory commercial salmon seasons have been May 15 to September 30 for silver salmon and April 15 to September 30 for all other types of salmon. (Fish & G. Code, §§ 8210.2, 8210.3.) The effect of the federal emergency regulations was to close the commercial salmon season in the fishery conservation zone off the California coast between June 1 and June 30, 1980, south of Cape Vizcaino and between June 1 and July 15, 1980, north of that point. (45 Fed.Reg. 29250, 29251, 29253 (May 1, 1980).)

On May 28, 1980, Director responded to the federal regulations by filing emergency regulations prefaced by a statement of "specific facts constituting the need for immediate action" (Gov. Code, § 11346.1) which recited in part: "Drought conditions in 1976 and 1977 reduced the survival of juvenile salmon produced in those years. Adult salmon populations available to the 1980 fisheries will be depressed. In order to assure adequate numbers of spawning fish, fishing effort in 1980 must be reduced. Specific regulations to achieve the required resource protection are contained in the "Proposed Plan for Managing the 1980 Salmon Fisheries off the Coasts of California, Oregon and Washington," prepared by the Pacific Fishery Management Council. [¶] Pursuant to Section 7652 of the Fish and Game Code, the following

---

report to the Legislature which statutes or regulations of the commission need to be amended or repealed, and any regulations adopted by the director that need to be enacted as statutes, to conform state law to any fishery management plan, or amendment thereto, that has been approved by the secretary to avoid any substantial and adverse effect on such plan, or its amendments, by such state law." (Fish & G. Code, §§ 7650-7653.)

commercial salmon fishing regulation changes for the 1980 season are necessary to conform California laws to those adopted by the Pacific Fishery Management Council and approved by the Secretary of Commerce."

The California emergency regulations themselves sought to effect the same closures within California's three-mile limit as the federal emergency regulations had established outside the three-mile limit. (Cal. Admin.Code, tit. 14, former § 182 (replaced July 11, 1980: Cal. Admin.Reg. 80, No. 28).)

On June 20, 1980, plaintiff Salmon Trollers Marketing Association (hereinafter Salmon Trollers) sought injunctive and declaratory relief and a peremptory writ of mandate. After hearing, the superior court granted a peremptory writ of mandate and an injunction ordering the Director to annul and rescind the regulations and enjoining the Director from enforcing them.

The Director contends on appeal that the issuance of the emergency regulations and closure of the salmon fishing season was constitutional and valid pursuant to the enactment of Fish and Game Code sections 7650 to 7653. Respondent Salmon Trollers contends that section 7652 constitutes an unlawful delegation of legislative power and fails to afford substantive due process to Salmon Trollers.

By their own terms the California emergency regulations expired by the end of September 1980. The Salmon Trollers moved to dismiss this appeal as moot. The Director opposed the motion on the ground that the question of the validity of section 7652 will recur and is of substantial public interest. ██ "It is now established law that where ... issues on appeal affect the general public interest and the future rights of the parties, and there is reasonable probability that the same questions will again be litigated and appealed, an appellate court may, although the appeal be subject to dismissal, nevertheless adjudicate the issues involved." (*People* v. *West Coast Shows, Inc.* (1970) 10 Cal. App.3d 462, 468 [89 Cal.Rptr. 290].) This court denied Salmon Trollers' motion to dismiss.

██ Salmon Trollers contends that section 7652 violated the constitutional doctrine of separation of powers in California Constitution, article III, section 3, in that it purported to delegate *legislative* func-

tions to an *executive* agency.[3] The validity of a legislative body's delegation of powers to another agency was recently reviewed by this court in *Groch* v. *City of Berkeley* (1981) 118 Cal.App.3d 518 [173 Cal.Rptr. 534] and the general principles set forth in that case are applicable to the case at bench. ■ "A legislative body such as a city council may properly delegate powers to an administrative body such as the board of adjustments if (1) the legislative body retains control over the power to make fundamental policy decisions, and (2) the procedure established for the exercise of delegated power adequately safeguards those affected. [Citation.] ... [¶] ... 'Once the legislative body has determined the issue of policy ... the subsequent filling in of the facts in application and execution of the policy does not constitute legislative delegation.'" (*Groch* v. *City of Berkeley, supra*, 118 Cal.App.3d 518, 522-523, citing *Kuglar* v. *Yocum* (1968) 69 Cal.2d 371, 377 [71 Cal. Rptr. 687, 445 P.2d 303].) These principles have often been spelled out in more detail. (E.g., *Kuglar* v. *Yocum, supra; Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 816-819 [114 Cal.Rptr. 577, 523 P.2d 617]; *City of Santa Ana* v. *City of Garden Grove* (1979) 100 Cal.App.3d 521, 529 [160 Cal.Rptr. 907].) The basic precept is "the belief that the Legislature as the most representative organ of government should settle insofar as possible controverted issues of policy and that it must determine crucial issues whenever it has the time, information and competence to deal with them." (*Clean Air Constituency* v. *California State Air Resources Board, supra*, 11 Cal.3d 801, 817.) The concept of the Legislature as the ultimate policymaker is basic to the separation of powers. (Cal. Const., art. III, § 3, art. IV, § 1.)

■ A legislative act is presumed to be constitutional. "Unconstitutionality must be clearly shown, and doubts will be resolved in favor of its validity." (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 43, p. 3281.)

■ "The doctrine prohibiting delegation of legislative power rests on the premise that the Legislature may not abdicate its responsibility to resolve the 'truly fundamental issues' by delegating that function to others or by failing to provide adequate directions for the implementation of its declared policies. (*Kugler* v. *Yocum* [1968] 69 Cal.2d 371, 376-

---

[3]Article III, section 3, provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

377 . . . .) Where the Legislature has made the fundamental policy decisions and delegated to some other body the task of implementing those policies under adequate safeguards, there is no violation of the doctrine of nondelegability of legislative power." (*City of Santa Ana* v. *City of Garden Grove, supra,* 100 Cal.App.3d 521, 529; see also *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 507 [96 Cal.Rptr. 553, 487 P.2d 1193]; *Kugler* v. *Yocum, supra,* at pp. 375-377.)

Because the Legislature by its very nature must frequently delegate authority to administrative officers, courts are understandably reluctant to interfere with such delegations. Rather, delegation by the Legislature is viewed as a positive and beneficial way to implement legislation. (See *First Industrial Loan Co.* v. *Daugherty* (1945) 26 Cal.2d 545, 549 [159 P.2d 921].)

■ Reviewing sections 7650-7653, it is clear that adequate standards are set forth to guide the Director as he implements the basic policy decision already made by the Legislature. It is legislative judgment that the state shall fully cooperate and assist in the formulation of fishery management plans adopted by the council. A basic policy determination has also been made to support the fishery management plan once adopted by the council. This support is to be carried out by the Director, when necessary, by suspending inconsistent statutes or regulations temporarily and adopting consistent regulations effective up to 180 days only. In the meantime, the Legislature clearly intends to consider conforming California statutory law to fishery management plans adopted by the council (Fish & G. Code, § 7653), based on the Director's report to the Legislature as to which statutes should be amended, repealed or adopted. (Fish & G. Code, § 7653.) A lasting and underlying policy decision is that the Legislature has determined to continue state jurisdiction over its fisheries within three miles offshore by avoiding conflict with the federal fishery plan. (Fish & G. Code, § 7652.) These are fundamental policy determinations made by the Legislature and not by the Director of Fish and Game.

The Director is given the task of carrying out this policy by formulating fishery plans in cooperation with the Pacific Fishery Management Council. The Director is also instructed to temporarily conform state statutes if necessary to avoid a substantial adverse impact on the Pacific Fishery Management Council's plan. These are tasks of a type usually left in the hands of administrators. Formulating a fishery management

plan requires expertise, biological data collection and evaluation, and consultation with the commercial fishing industry. The Legislature may properly delegate these duties to an administrator. A determination that a particular state statute will or will not have substantial adverse effect on a federal fishery plan requires biological expertise, experience in the peculiar problems of fishery law enforcement, and an understanding of marketing practices. The Legislature has set out the basic policy guidelines. The standards are clear.

Sufficient safeguards are specified in the statute: The Director's authority to adopt regulations which conform to the federal fishery plan is limited to 180 days and the Director must immediately report such adoption to the Legislature and identify those statutes or other regulations which need modification, repeal or adoption. Reservation of this authority by the Legislature to itself is a significant "safeguard adequate to prevent ... abuse" of the delegated authority. (*Kugler* v. *Yocum, supra*, 69 Cal.2d 371, 376.)

In *Kugler* an ordinance of the City of Alhambra, which sets the salaries of firemen to be not less than those for the City of Los Angeles and the County of Los Angeles, was challenged. The Supreme Court upheld the ordinance against a challenge of invalid delegation of legislative power, stating: "The criteria set up by the proposed enactment reasonably relate to the fulfillment of the legislative purposes. *If an external private or* governmental body will be involved in the application of the legislative scheme, it must be an agency that *the Legislature can expect will reasonably perform its function.* If, for instance, the statute provides that salaries are to be adjusted to future changes in the cost of living, the legislation must designate a body, such as the United States Department of Labor, which may be expected to reasonably perform the function of ascertaining the cost of living...." (*Kugler* v. *Yocum, supra*, at p. 382; italics added.) Here, to the extent that decisions of the Federal Pacific Fishery Management Council will necessarily influence the Director's decisions, it is clear that the Pacific Fishery Management Council can be expected reasonably to perform its function.

As a general rule regulations enacted by an agency exercising delegated powers "must conform to the legislative will if we are to preserve an orderly system of government" (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697]) and hence, for example, may not validly conflict with the enabling statute (Gov. Code, § 11342.2). But several California cases make clear that if it is the "leg-

islative will" that an agency have power to render legislative acts inoperative in one sense or another, such delegation will be valid so long as the usual conditions of valid delegation—retention of control over "fundamental policy decisions" and appropriate standards and safeguards for exercise of the delegated power—are met. Given a clear legislative articulation of fundamental policy and appropriate standards and safeguards it has been held that the Legislature may validly delegate authority to determine whether and where a statutory regulatory plan should go into effect (*Ray* v. *Parker* (1940) 15 Cal.2d 275, 284-286 [101 P.2d 665]; *Jersey Maid Milk Products Co.* v. *Brock* (1939) 13 Cal.2d 620, 641-644 [91 P.2d 577]; *Dept. Pub. Health* v. *Board of Supervisors* (1959) 171 Cal.App.2d 99, 104-105 [339 P.2d 884]) or to delay the effective date of statutory provisions enacted by the Legislature on an urgency basis to protect the public health (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 816-819 [114 Cal.Rptr. 577, 523 P.2d 617]).

The trial court in its memorandum of decision also declared section 7652 to be "too broad" in that it granted power to the Director to suspend or affect other codes (e.g., Water, Civil Procedure, Public Resources, Penal), in addition to the Fish and Game Code. First, the only test here is whether a basic policy decision has been made by the Legislature. If in fact the Legislature has made a determination that statutes other than those pertaining to fishing may be suspended it clearly has the power to do so. Second, whether the Legislature did intend to address statutes outside of the Fish and Game Code is a matter of statutory interpretation, but in any event that question is not ripe for adjudication. The facts of this case do not involve a suspension of a statute in some other code not pertaining to fishing. "The rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court." (*People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126].) "Such opinions, such advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multi-faced situation embracing conflicting and demanding interests, we have consistently refused to give." (*United States* v. *Fruehauf* (1961) 365 U.S. 146, 157 [5 L.Ed.2d 476, 483, 81 S.Ct. 547].)

Salmon Trollers contends that the procedure set forth in section 7710 of the Fish and Game Code was controlling in this case. Section 7710

was enacted in 1974, two years prior to the adoption of the Federal Fishery Conservation and Management Act of 1976, and two years prior to the California legislation in response to the federal act, which is here challenged. The fact that the Director has other regulatory powers under other statutes does not affect the validity of the statutory scheme set forth in article 1.5, sections 7650-7653, Fish and Game Code.

■  Salmon Trollers suggests that sections 7650-7653 are invalid because they contain no provision for public hearing. But clearly the Director's rule-making function is subject to the broad provisions of the Government Code chapter establishing an Office of Administrative Law. (Gov. Code, §§ 11340-11351; cf. Gov. Code, §§ 11342, 11343, 11346.1.) The record shows that an adequate declaration of emergency was made and that time restraints required immediate action in order to comply with the legislative mandate of section 7652. No hearing is required prior to the adoption of emergency regulations. (Gov. Code, § 11346.1.) The requirement of a later confirmation hearing became moot when the Director was compelled to withdraw the regulation by the trial court's writ of mandate.

The court below did not make a determination whether an emergency existed and based its ruling solely on its determination that section 7652 was unconstitutional. Thus, whether an emergency existed is not an issue on this appeal. Furthermore, no purpose would be served at this time by remanding the cause to the trial court for determination of whether a sufficient factual basis existed in 1980 for the exercise of emergency powers. The 1980 emergency regulations have by their own terms now expired and any future regulation would be based on facts existing at the time of its adoption.

In support of its substantive due process argument, Salmon Trollers contends that "[t]he director's construction of Section 7652 as mandating the enactment of whatever federal regulatory fishery management scheme might thereafter be enacted, however unwise or unsupported by evidence sufficient to meet the requirements of section 7710 of the Fish and Game Code, combined with his use of emergency powers herein, deprived petitioners of substantive due process in exposing them to arbitrary administrative action carried out under an unlawful delegation of legislative power."

What the Director might or might not have thought or done in arriving at the conclusion that he should suspend the salmon season is not

before this court. The question is whether the statute *on its face* afforded sufficient standards and safeguards. ■ "Substantive due process ... deals with protection from arbitrary legislative action, even though the person whom it is sought to deprive of his right to life, liberty or property is afforded the fairest of procedural safeguards. In substantive law such deprivation is supportable only if the conduct from which the deprivation flows is prescribed by reasonable legislation reasonably applied, i.e., the law must not be unreasonable, arbitrary or capricious but must have a real and substantial relation to the object sought to be attained." (*Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1, 21 [94 Cal.Rptr. 904];'cf. 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 279, pp. 3569-3570.) It is said that "[i]ndefiniteness in statutory terminology may be tested as an invalid delegation of power as well as a denial of due process." (*Wotton* v. *Bush* (1953) 41 Cal.2d 460, 468 [261 P.2d 256].) But here the standard of definiteness would be the same under either test; if section 7652 is constitutional under a delegation analysis it also affords substantive due process.

Salmon Trollers' contention that under section 7652, as contrasted to section 7710, they were denied a public hearing at which they might have presented evidence to demonstrate that there was no emergency and that no closure was required misconceives the issue. Section 7652 adequately incorporates the administrative rule-making provisions of the Government Code, which in turn gave Salmon Trollers various ways to be heard. Salmon Trollers chose judicial review and obtained a hearing but then elected not to submit evidence. They had an adequate *opportunity* to be heard under section 7652 and the extent of the hearing was determined by their election. They should not now complain.

We conclude that Fish and Game Code section 7652 offends neither the separation of powers clause nor the due process clause.

The judgment is reversed.

Caldecott, P. J., and Poché, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied December 2, 1981. Bird, C. J., was of the opinion that the petition should be granted.