[Nos. A112343, A112594. First Dist., Div. Two. Jan. 11, 2007.]

PATRICIA SAMPLES, Plaintiff and Respondent, v.
EDMUND G. BROWN, JR., as Attorney General, etc., Defendant and
Appellant.

## COUNSEL

Bill Lockyer, Attorney General, Louis R. Mauro, Assistant Attorney General, Christopher E. Krueger and Kathleen A. Lynch, Deputy Attorneys General, for Defendant and Appellant.

Mark T. Clausen for Plaintiff and Respondent.

## OPINION

**HAERLE, J.—**

## I. INTRODUCTION

The trial court entered a judgment declaring that sections 14602.6 and 23109.2 of the Vehicle Code[1] are unconstitutional on their face. The court

---

[1] Undesignated statutory reference are to the Vehicle Code.

also awarded respondent, Patricia Samples (Samples), $249,018.59 in attorney fees and costs pursuant to Code of Civil Procedure section 1021.5. The Attorney General appeals both the judgment and the attorney fees order. We reverse.[2]

## II. STATEMENT OF FACTS

A. *Background*

In October 2002, Samples commenced this action challenging two distinct statutory schemes: (1) provisions of the Controlled Substances Act relating to the seizure and forfeiture of property (Health & Saf. Code, §§ 11469–11495), and (2) provisions of the Vehicle Code pertaining to impoundment of vehicles that are either driven by unlicensed drivers or used in dangerous activities such as speed contests.

Samples filed this action pursuant to section 526a of the Code of Civil Procedure as a taxpaying "citizen interested in the government's compliance with constitutional requirements." She did not allege, nor has she ever argued, that the statutes she challenged were applied to her or that she or any other individual had suffered any damages. Samples sought declaratory and injunctive relief or, in the alternative, a writ of mandate. The trial court sustained a demurrer to Samples's cause of action seeking a writ of mandate. After a motion for a preliminary injunction and a subsequent motion for summary adjudication of issues were both denied by the trial court, Samples voluntarily dismissed her cause of action directed at the Controlled Substances Act.[3]

The trial court resolved Samples's constitutional challenges to the Vehicle Code provisions in the context of a motion for summary adjudication of issues which the court granted in part on March 8, 2004. The Honorable Lawrence G. Antolini found that two provisions, sections 14602.6 and 23109.2, subdivision (a) (hereafter section 23109.2(a)), were unconstitutional on their face.

---

[2] In this opinion we do not address what Samples refers to in her appellate brief as three "alternative grounds to affirm the judgment," one of which Samples concedes was not raised in the trial court at all. Contrary to Samples's contention, these three arguments are not alternative theories that could be utilized to affirm the judgment. They are substantively distinct claims relating to different statutory provisions than those at issue in this case.

[3] This court affirmed the order denying the preliminary injunction. (*Samples v. Lockyer* (June 16, 2004, A102873) [nonpub. opn.].)

B. *The Vehicle Code Provisions*

 1. *Section 14602.6*

■ Section 14602.6 authorizes and regulates the impoundment of vehicles driven by persons without valid licenses. Subdivision (a) of this statute provides that, if a person is driving a vehicle without a valid license or in violation of a driving restriction, a peace officer is authorized to arrest the person and seize the vehicle and the "vehicle so impounded shall be impounded for 30 days." (§ 14602.6, subd. (a)(1).)

Section 14602.6, subdivision (b) (hereafter section 14602.6(b)), states: "The registered and legal owner of a vehicle that is removed and seized under subdivision (a) or their agents shall be provided the opportunity for a storage hearing to determine the validity of, or consider any mitigating circumstances attendant to, the storage, in accordance with Section 22852."[4]

■ Section 14602.6, subdivision (d), states that an impounded vehicle must be released to its registered owner or his or her agent prior to expiration of the impoundment period "under any of the following circumstances: [¶] (A) When the vehicle is a stolen vehicle. [¶] (B) When the vehicle is subject to bailment and is driven by an unlicensed employee of a business establishment, including a parking service or repair garage. [¶] (C) When the license of the driver was suspended or revoked for an offense other than those included in Article 2 (commencing with Section 13200) of Chapter 2 of Division 6 or Article 3 (commencing with Section 13350) of Chapter 2 of Division 6. [¶] (D) When the vehicle was seized under this section for an offense that does not authorize the seizure of the vehicle. (E) When the driver reinstates his or her driver's license or acquires a driver's license and proper insurance." (§ 14602.6, subd. (d)(1).)

■ Section 14602.6, subdivision (f), provides that an impounded vehicle must be released to its legal owner prior to expiration of the impoundment period if "[t]he legal owner is a motor vehicle dealer, bank, credit union, acceptance corporation, or other licensed financial institution legally operating in this state or is another person, not the registered owner, holding a security interest in the vehicle" provided that other specified conditions are met. (§ 14602.6, subd. (f)(1).)

■ Rental car agencies are separately addressed in section 14602.6, subdivision (h), which states that an impounded vehicle "shall be released to

---

[4] Section 22852 requires a public agency who directs storage of a vehicle to give notice of the storage and to provide a poststorage hearing to determine the validity of the storage. The trial court rejected Samples's claim that section 22852 violates due process and that ruling is not at issue in this appeal.

a rental car agency prior to the end of 30 days' impoundment if the agency is either the legal owner or registered owner of the vehicle and the agency pays all towing and storage fees related to the seizure of the vehicle." (§ 14602.6, subd. (h)(1).) Although the agency may continue to rent the recovered vehicle, it may not rent a vehicle to the driver of the recovered vehicle until 30 days after the date that the vehicle was seized. (§ 14602.6, subd. (h)(2).)

### 2. *Section 23109.2*

 Section 23109.2 authorizes and regulates the seizure and impoundment of a vehicle involved in a speed contest. This statute provides that, when a peace officer determines that a person was engaged in such an activity, his or her motor vehicle may be seized and "[a] motor vehicle so seized may be impounded for not more than 30 days." (§ 23109.2(a).)

 A registered and legal owner of a vehicle seized pursuant to section 23109.2 or their agents are entitled to a storage hearing in accordance with section 22852 to determine the validity of the impoundment. (§ 23109.2, subd. (b).)

 Circumstances under which the impounding agency "shall" release the vehicle to its registered owner prior "to the conclusion of the impoundment period described in subdivision (a)" are set forth in section 23109.2, subdivision (c), and include situations in which the vehicle was stolen, the registered owner did not authorize the person involved in the speed contest to use his or her vehicle, the vehicle is owned by a rental car agency, or when criminal charges for engaging in a speed contest or other unauthorized activity are not filed or are dismissed.

 Section 23109.2, subdivision (d), provides that an impounded vehicle shall be released to its legal owner or the legal owner's agent "on or before the 30th day of impoundment" if the legal owner "is a motor vehicle dealer, bank, credit union, acceptance corporation, or other licensed financial institution legally operating in this state, or is another person, not the registered owner holding a security interest in the vehicle," and the legal owner or his or her agent "pays all towing and storage fees related to the impoundment of the vehicle," and "presents foreclosure documents or an affidavit of repossession for the vehicle."

### C. *The Trial Court's Rulings*

The trial court found that the phrase "mitigating circumstances" in section 14602.6(b), which directs an impounding agency to consider mitigating circumstances at a storage hearing, is unconstitutionally vague because there

is nothing in this statute or elsewhere which indicates what constitutes mitigating circumstances. The court also found that this phrase violates the separation of powers doctrine because the lack of any guidance as to the meaning of "mitigating circumstances" leaves the matter to law enforcement agencies across the state to interpret the phrase as they wish. In addition, the court found that section 14602.6 violates equal protection by authorizing the early release of impounded vehicles to rental car agencies. The court reasoned that there is no rational basis for distinguishing between car rental companies and private individuals in this context.

The trial court also found that section 23109.2(a), which pertains to vehicles used in speed contests, violates the separation of powers doctrine by providing for the impoundment of a vehicle for "up to 30 days" without providing any standards for determining when, within that 30-day period, a vehicle may be released.[5]

A judgment entered May 23, 2005, contained the following findings: "1. The court declares and decrees that the phrase 'mitigating circumstances' in Vehicle Code section 14602.6, on its face, is unconstitutionally vague. [¶] 2. The court declares and decrees that the phrase 'mitigating circumstances' in Vehicle Code section 14602.6, on its face, violates the separation of powers doctrine. [¶] 3. The court declares and decrees that Vehicle Code section 23109.2 (a), on its face, violates the separation of powers doctrine because the Legislature failed to provide guidelines for how an agency is to determine the length of impoundment under section 23109.2 (a). [¶] 4. The court declares and decrees that Vehicle Code section 14602.6, on its face, violates equal protection because the Legislature did not have a rational basis for distinguishing between vehicles that are privately owned and those that are owned by rental car companies. [¶] 5. As to every other claim or cause of action asserted in the complaint, plaintiff shall take nothing."

D. *Attorney Fees*

On July 11, 2005, the trial court awarded Samples attorney fees pursuant to section 1021.5 of the Code of Civil Procedure in the amount of $238,047.74, which included a multiplier of 1.5. The court denied Samples's request for costs in the amount of $7,313.90. However, on December 2, 2005, the court granted Samples's motion for reconsideration and awarded her $7,313.90 for costs, and applied a multiplier of 1.5 which resulted in a total award of $249,018.59.

---

[5] On January 1, 2007, section 23109.2 was repealed and a new version of that statute was enacted. However the language in former section 23109.2(a) which the trial court found to be unconstitutional on its face appears in both versions of this statute and the changes that were made to this statute have no bearing on the trial court's reasoning nor on our analysis of the constitutional issue presented.

## III. DISCUSSION

A. *Standards Governing Review*

" 'The interpretation of a statute and the determination of its constitutionality are questions of law. In such cases, appellate courts apply a de novo standard of review.' [Citations.]" (*Valov v. Department of Motor Vehicles* (2005) 132 Cal.App.4th 1113, 1120 [34 Cal.Rptr.3d 174].)

■ "A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual. [Citation.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145] (*Tobe*).) " ' "If feasible within bounds set by their words and purpose, statutes should be construed to preserve their constitutionality." ' " (*Mason v. Office of Admin. Hearings* (2001) 89 Cal.App.4th 1119, 1126–1127 [108 Cal.Rptr.2d 102], fn. omitted (*Mason*).) "The analysis begins with 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.]" ' " (*Tobe, supra,* 9 Cal.4th at p. 1107.)

■ In *Tobe, supra,* 9 Cal.4th at page 1084, our Supreme Court articulated the following test for substantiating a facial constitutional challenge to a statute: " ' "To support a determination of facial unconstitutionality, voiding the statute as a whole, [a party] cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular application of the statute . . . . Rather, [he or she] must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." ' [Citations.]" (Italics omitted.) Samples questions the continuing viability of this test and suggests that the burden of proving a statute is unconstitutional on its face was substantially lightened by our Supreme Court in *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 342–348 [66 Cal.Rptr.2d 210, 940 P.2d 797] (*American Academy*). We disagree.

■ The *American Academy* court rejected a contention that a statute that broadly impinges upon fundamental constitutional privacy rights is nevertheless valid on its face if "there is *any* person covered by the law as to whom the statute's requirements constitutionally may be applied." (*American Academy, supra,* 16 Cal.4th at p. 347.) According to the court, "when a statute broadly and directly impinges upon the fundamental constitutional privacy rights of a substantial portion of those persons to whom the statute applies, the statute can be upheld only if those defending the statute can establish that, considering the statute's general and normal application, the

compelling justifications for the statute outweigh the statute's impingement on constitutional privacy rights and cannot be achieved by less intrusive means." (*Id.* at p. 348.)

As the *American Academy* court expressly acknowledged, its clarification of the test governing a facial overbreadth challenge to a statute that impinges on a fundamental privacy right is in "no way inconsistent" with the *Tobe* standard quoted above. (*American Academy, supra,* 16 Cal.4th at p. 347.) More to the point though, in the present case, Samples does not make an overbreadth challenge and none of her constitutional claims implicate a fundamental constitutional privacy right. Therefore, the *American Academy* test for evaluating facial challenges to statutes which broadly impinge on fundamental privacy rights has no application here.[6]

### B. *Section 14602.6*

#### 1. *Statutory Vagueness*

The first issue we address is whether the trial court erred by holding that the statutory phrase "mitigating circumstances" in section 14602.6(b) is unconstitutionally vague on its face.

■ "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." (*Grayned v. City of Rockford* (1972) 408 U.S. 104, 108 [33 L.Ed.2d 222, 92 S.Ct. 2294] (*Grayned*).) "Civil as well as criminal statutes must be sufficiently clear to provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies." (*Mason, supra,* 89 Cal.App.4th at p. 1126.) The vagueness doctrine serves two primary functions. First, it affords citizens reasonable notice of what is prohibited. "Vague laws may trap the innocent by not providing fair warning." (*Grayned, supra,* 408 U.S. at p. 108.) Second, this doctrine requires that a "legislature establish minimal guidelines to govern law enforcement." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116 [60 Cal.Rptr.2d 277, 929 P.2d 596] (*Acuna*).) "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." (*Grayned, supra,* 408 U.S. at p. 108.)

■ Two principles identified by our Supreme Court and endorsed by the United States Supreme Court guide our analysis. First, the challenged statutory language must be evaluated "in a specific context." (*Acuna, supra,* 14

---

[6] For similar reasons, we reject Samples's effort to utilize a balancing test that was used by our Supreme Court in *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 347 [84 Cal.Rptr.2d 425, 975 P.2d 622], to evaluate a facial due process challenge that a procedural scheme was fundamentally unfair.

Cal.4th at p. 1116, italics omitted.) "A contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness." (*Ibid.*) A court errs by characterizing statutory language as vague without considering that language in context which includes, in particular, the purpose of the statute at issue. (See, e.g., *Tobe, supra*, 9 Cal.4th at p. 1107.) Second, the Constitution requires only a reasonable degree of certainty or specificity. (*Acuna, supra*, 14 Cal.4th at p. 1117.) " ' "A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' [Citation.]" (*Tobe, supra*, 9 Cal.4th at p. 1107.)

To clarify our analysis, we begin by noting what is *not* at issue here. There is no contention that this statute fails to provide reasonable notice of what it prohibits. The conduct prohibited by section 14602.6 is unlicensed driving. This statute also provides unquestionably clear notice that a person who drives without a license may be arrested, that the car driven by an unlicensed driver may be seized by a law enforcement officer, and that a seized vehicle will be impounded for no longer than 30 days.

As for the second function of the vagueness doctrine, the requirement of reasonably clear standards of enforcement, the statute itself sets forth several guidelines or standards which govern the impoundment agencies' enforcement efforts. Such an agency is required to, inter alia, (1) impound the seized vehicle for 30 days subject to specified exceptions, (2) provide the owner with an opportunity to attend a storage hearing, and (3) consider the validity of the impoundment and any mitigating circumstances presented at the storage hearing. Samples's facial vagueness challenge relates exclusively to the third of these statutory directives. She contends, and the trial court found, that the Legislature's directive to impounding agencies to consider mitigating circumstances renders this statute unconstitutionally vague on its face.

The phrase "mitigating circumstances" is reasonably clear in its meaning. The term is used to refer to facts or situations which reduce culpability but do not justify or excuse wrongful conduct. (See, e.g., *Smith v. Santa Rosa Police Dept.* (2002) 97 Cal.App.4th 546, 554–556 [119 Cal.Rptr.2d 72] (*Smith*) [providing numerous examples]; Black's Law Dictionary (7th ed. 1999) p. 236, col. 1–2 [defining term as, inter alia, "[a] fact or situation that does not justify or excuse a wrongful act or offense but that reduces the degree of culpability and thus may reduce the damages (in a civil case) or the punishment (in a criminal case)"].)

Therefore, it is reasonably clear that section 14602.6(b) directs the impounding agency to consider facts or situations that might reduce the

culpability of the owner and warrant an early release of the impounded vehicle. However, the perceived ambiguity with this directive is that the Legislature failed to provide sufficient guidance for determining what facts or situations should be viewed by the agency as reducing the culpability of the owner of the impounded vehicle. In this regard, the trial court explained that it believed section 14602.6(b) is unconstitutionally vague because it could "find nothing in the statute, or elsewhere, that indicates what might constitute 'mitigating circumstances.' "

We reverse the trial court's decision because we do find examples of mitigating circumstances both in the statute itself and in case law construing this statutory language.

■ First, as discussed earlier in this opinion, section 14602.6 separates vehicle owners into three distinct categories, registered owners, legal owners and rental car agencies, and then sets forth specific grounds upon which such owners may obtain release of an impounded vehicle prior to expiration of the 30-day impoundment period. (See § 14602.6, subds. (d), (f) & (h).) These provisions codify facts or situations which, in the view of the Legislature, reduce culpability and warrant a reduction in the length of the impoundment period. In other words, "mitigating circumstances" are expressly identified in these provisions of section 14602.6.

■ The express examples of mitigating circumstances set forth in section 14602.6 preclude a finding that the phrase "mitigating circumstances" in section 14602.6(b) is unconstitutionally vague on its face. A party making a facial vagueness challenge "must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that 'the law is impermissibly vague *in all of its applications.*' [Citations.]" (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629, 753 P.2d 585] (*Evangelatos*).)[7]

Another mitigating circumstance, one that is *not* expressly set forth in section 14602.6, was identified by this court in *Smith*. There, the respondent loaned his truck to his grandson, Pennebaker. The truck was impounded after police stopped Pennebaker and determined that his license was suspended. At the storage hearing, the respondent told the police officer who conducted the

---

[7] "The scope of permissible challenges to a law based on grounds of vagueness differs in [an] important respect from challenges based on overbreadth. While a claim of overbreadth may succeed if it is shown that the law at issue is 'substantially overbroad,' that is, affects more than a marginal group of those potentially subject to its sweep [citation], a claim that a law is unconstitutionally vague can succeed *only* where the litigant demonstrates, not that it affects a substantial number of others, but that the law is vague as to her or 'impermissibly vague in *all of its applications.*' [Citations.]" (*Acuna, supra,* 14 Cal.4th at p. 1116.)

hearing that he did not know Pennebaker's license had been suspended. (*Smith, supra,* 97 Cal.App.4th at pp. 550–551.) Nevertheless, the officer determined to keep the truck impounded for the entire 30 days provided by section 14602.6 for the stated reason that appellant failed to make "a reasonable effort or inquiry to determine whether his grandson possessed a valid license to operate the vehicle." (*Smith,* at p. 551.) Respondent filed a petition for writ of mandate which the trial court granted and this court affirmed. We expressly held that "the registered owner's lack of actual knowledge that the driver to whom he loaned his car was not validly licensed constitutes a mitigating circumstance under section 14602.6, subdivision (b), warranting release of the vehicle to the registered owner before expiration of the 30-day storage period set forth in the statute." (*Id.* at pp. 549–550.)

In the present case, the trial court rejected the Attorney General's contention that *Smith* precludes a finding that section 14602.6(b) is unconstitutional on its face, stating that *Smith* does not "cure the defect of vagueness or the fact that the Legislature has provided no guidance at all." However, it is not the judiciary's role to "cure" a constitutional defect but, rather, to interpret a law in a constitutional manner to the extent possible. Further, *Smith* contains a very lengthy analysis of the legislative history of section 14602.6(b) which constitutes "guidance." Indeed, it guided us to the conclusion that lack of actual knowledge is a mitigating circumstance.

Apparently, the trial court was misled by the fact that the *Smith* respondent also challenged the constitutionality of section 14602.6(b) on vagueness grounds and this court elected not to address that challenge. But, clearly, the reason we did not address that constitutional issue was because we were able to determine, with the aid of standard rules of statutory construction, that the phrase "mitigating circumstances" embraced the situation before us in which the owner of the vehicle lacked actual knowledge that the person he permitted to drive his vehicle did not have a valid license. Implicit in our analysis and conclusions in *Smith* was a determination that section 14602.6(b) was not unconstitutional as it was applied by us under the facts presented in that case.

The trial court pointed out that the impounding agency in *Smith* did not consider lack of actual knowledge to be a mitigating circumstance. But the fact that section 14602.6(b) was misinterpreted by the impounding agency in *Smith* does not support a finding in this case that the statute is unconstitutionally vague *on its face.* "[W]hen situations in which the statutory language is ambiguous arise, the statute's application can be resolved by trial and appellate courts 'in time-honored, case-by-case fashion' by reference to the language and purposes of the statutory scheme as a whole." (*Evangelatos, supra,* 44 Cal.3d at p. 1202.) Indeed, the *Smith* case is itself an example of

how perceived ambiguity problems with the mitigating circumstances standard should be resolved, i.e., in the context of a specific application to an actual factual situation.

■ To the extent that the trial court looked for situations in which the challenged language could be ambiguous rather than recognizing those situations in which application of the mitigating circumstances requirement is reasonably clear, the trial court fundamentally misapplied the law governing facial vagueness challenges and committed reversible error. "Many, probably most, statutes are ambiguous in some respects and instances invariably arise under which the application of statutory language may be unclear. So long as a statute does not threaten to infringe on the exercise of First Amendment or other constitutional rights, however, such ambiguities, even if numerous, do not justify the invalidation of a statute on its face." (*Evangelatos, supra*, 44 Cal.3d at p. 1201.)

■ To summarize, the reference to "mitigating circumstances" in section 14602.6(b) does not render that statutory provision unconstitutionally vague on its face. The mitigating circumstances standard is reasonably specific and certain when viewed in context. Section 14602.6 itself sets forth mitigating circumstances which require release of an impounded vehicle prior to expiration of the 30-day period. Furthermore, this court's decision in *Smith* is a constitutional application of the "mitigating circumstances" standard set forth in section 14602.6(b), which precludes a finding that that statute is unconstitutional on its face. (*Evangelatos, supra*, 44 Cal.3d at p. 1201.)

### 2. *Separation of Powers*

■ The trial court also found that section 14602.6(b) violates the nondelegation doctrine. This doctrine is "rooted in the principle of separation of powers that underlies our tripartite system of Government." (See generally *Mistretta v. United States* (1989) 488 U.S. 361, 371–372 [102 L.Ed.2d 714, 109 S.Ct. 647].) " 'An unconstitutional delegation of legislative power occurs when the Legislature confers upon an administrative agency unrestricted authority to make fundamental policy decisions. [Citations.] "This doctrine rests upon the premise that the legislative body must itself effectively resolve the truly fundamental issues. It cannot escape responsibility by explicitly delegating that function to others or by failing to establish an effective mechanism to assure the proper implementation of its policy decisions." [Citation.]' [Citations.]" (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 632–634 [92 Cal.Rptr.2d 115].)

■ However, "[o]nce it has established the law, the Legislature may delegate the authority to administer or apply the law." (*Wilkinson v. Madera*

*Community Hospital* (1983) 144 Cal.App.3d 436, 442 [192 Cal.Rptr. 593] (*Wilkinson*).) Therefore, "[a]n unconstitutional delegation of authority occurs only when a legislative body (1) leaves the resolution of fundamental policy issues to others or (2) fails to provide adequate direction for the implementation of that policy. [Citation.]" (*Carson Mobilehome Park Owners' Assn. v. City of Carson* (1983) 35 Cal.3d 184, 190 [197 Cal.Rptr. 284, 672 P.2d 1297] (*Carson*); see also *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 491–492 [97 Cal.Rptr.2d 334, 2 P.3d 581].)

In this case, the trial court characterized the determination of whether mitigating circumstances warrant an early release of an impounded vehicle as a fundamental policy decision. We disagree. The mitigating circumstances inquiry is one of several directives in section 14602.6 which together comprise the mechanism for implementing the legislative policy decision to deter and punish unlicensed driving. (See generally *Smith, supra*, 97 Cal.App.4th at pp. 557–568.) "Beyond doubt there is a legislative policy favoring prevention and punishment of unlicensed driving. (See § 14607.4 [legislative findings and declarations].)" (*Smith, supra*, 97 Cal.App.4th at p. 554; see also *People v. Spence* (2005) 125 Cal.App.4th 710, 714–715 [23 Cal.Rptr.3d 92].)

The question remains, however, whether the Legislature has provided adequate direction for implementing the statutory directive to impound a seized vehicle for 30 days absent a showing of mitigating circumstances. We have already rejected the trial court's overstatement that the Legislature failed to provide *any* guidance as to what constitutes a mitigating circumstance. It did provide guidance both expressly, in section 14602.6, subdivisions (d), (f), and (h), and in the legislative history of section 14602.6(b) which, as we explained in *Smith*, establishes that a vehicle owner's lack of actual knowledge regarding the unlicensed status of the driver is also a mitigating circumstance. These clear examples of mitigating circumstances are sufficient to undermine a facial vagueness claim. However, to resolve the delegation issue, we must also determine whether the Legislature has provided sufficient guidance, through these settled examples of mitigating circumstances or in some other way, to ensure proper implementation of the legislative policy by the various impoundment agencies in this state.

The requisite legislative guidance need not take the form of express standards. (*Kugler v. Yocum* (1968) 69 Cal.2d 371, 381 [71 Cal.Rptr. 687, 445 P.2d 303].) Indeed, our Supreme Court has advised that " '[t]he need is usually not for standards but for safeguards. . . . [The] most perceptive courts are motivated much more by the degree of protection against arbitrariness than by the doctrine about standards . . . .' [Citation.] The requirement for 'standards' is but one method for the effective implementation of the legislative policy decision; the requirement possesses no sacrosanct quality in itself

so long as its purpose may otherwise be assured." (*Id.* at p. 381; see also *Wilkinson, supra,* 144 Cal.App.3d at p. 442 ["a delegation of authority must be accompanied by safeguards which insure that the delegat[e] does not act arbitrarily."].)

Here, we do find the requisite safeguards for implementing the mitigating circumstances inquiry. The statute itself expressly provides that all impounded vehicles are to be stored for 30 days absent a showing of mitigating circumstances. This provision establishing a maximum period of impoundment is an important safeguard limiting the authority of the enforcement agency and putting the public on notice of the benchmark for implementing the legislative policy decision to deter unlicensed driving by impounding the vehicle driven by an unlicensed person. In addition, as we have already discussed, this statute also expressly identifies situations which constitute mitigating circumstances as a matter of law and require early release of an impounded vehicle. These provisions are also safeguards ensuring a minimal level of consistency throughout the state.

Finally, the case law makes clear that the requisite standards or safeguards for effective implementation of a legislative policy decision can and often are implied by the statutory purpose. (*People v. Wright* (1982) 30 Cal.3d 705, 713 [180 Cal.Rptr. 196, 639 P.2d 267]; see also *Wilkinson, supra,* 144 Cal.App.3d at p. 442 [observing that courts commonly supply standards or safeguards].) In our view, the legislative policy underlying this statute is the most important safeguard ensuring proper implementation of the mitigating circumstances inquiry. This safeguard dictates that, when considering whether scenarios other than those identified in the statute itself constitute mitigating circumstances, the enforcement agency's determination *must* be consistent with the fundamental policy decision effectuated by this statute, i.e., to punish and prevent unlicensed driving. It is this important safeguard which gives meaning and purpose to the mitigating circumstances inquiry by permitting agencies to take into account the fact that, sometimes, impounding a vehicle for the entire 30-day period will not advance the deterrent purpose of this statute.

Our decision in *Smith* is an example of how this final safeguard works. In that case, the respondent proved that he did not know that his grandson's license was suspended when he allowed the grandson to use his vehicle to get to work. Under those circumstances, the deterrent purpose of the impoundment consequence of this statute could not be fully realized because (1) the unlicensed driver did not own or have custody of the vehicle, and (2) the person who loaned the vehicle to the driver truly did not know that the driver's license was suspended. Therefore, while these circumstances did not excuse the violation, they were facts which reduced the culpability of the owner and which constituted mitigating circumstances under section 14602.6(b).

Urging us to find a lack of adequate guidance for enforcement of this statute, Samples underscores evidence in the record suggesting that at least some agencies have no written policies governing the mitigating circumstances inquiry and instead employ their own subjective criteria to determine what constitutes a mitigating circumstance. Equally troubling is evidence suggesting that many agencies do not consider the vehicle owner's lack of actual knowledge regarding the driver's licensing status to be a mitigating circumstance under section 14602.6(b) notwithstanding this court's decision in *Smith, supra,* 97 Cal.App.4th 546.

■ We are concerned by Samples's anecdotal evidence and we certainly do not condone the conduct of agencies who ignore our holding in *Smith* or in some other way circumvent the safeguards designed to ensure proper enforcement of section 14602.6. However, this evidence does not alter our conclusion that there has been no unconstitutional delegation. Individuals who believe this statute has been improperly or illegally applied to them may seek redress in the courts. As the United States Supreme Court observed long ago, it is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority. Private rights are protected by access to the courts to test the application of the policy in the light of these legislative declarations." (*American Power Co. v. S.E.C.* (1946) 329 U.S. 90, 105 [91 L.Ed. 103, 67 S.Ct. 133].)

### 3. *Equal Protection*

The trial court found that section 14602.6, on its face, violates the equal protection clause by authorizing the automatic release of an impounded vehicle to a rental car agency while simultaneously requiring private individuals to appear at a storage hearing and satisfy one of the statutory circumstances for an early release. In the trial court's view, the Legislature did not have a rational basis for distinguishing between vehicles that are privately owned and those that are owned by rental car companies.

■ "The rational basis standard applies to equal protection challenges of economic and social welfare legislation under both the federal and state Constitutions. [Citations.]" (*Sneed v. Saenz* (2004) 120 Cal.App.4th 1220, 1248–1249 [16 Cal.Rptr.3d 563].) " ' "[I]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [Citations.] Where there are 'plausible reasons' for [the classification] 'our inquiry is at an end.' " ' " (*Kasler v. Lockyer, supra,* 23 Cal.4th at pp. 481–482.)

In the present case, the statutory classification to which Samples objects is effectuated by subdivision (h) of section 14602.6, which provides that a vehicle impounded pursuant to this statute which is owned by a rental car agency must be released to the agency prior to end of the 30-day impoundment period once the agency pays all towing and storage fees related to the seizure of the vehicle. Subdivision (h) was part of a 1995 amendment to section 14602.6 which also added the mitigating circumstances inquiry we have already discussed. (Stats. 1995, ch. 922, § 3, p. 7032; see generally *Smith, supra,* 97 Cal.App.4th at pp. 562–565.)

An analysis of the 1995 amendment by the Assembly Committee on Transportation offers the following insight as to the intent behind section 14602.6 subdivision (h): "Law enforcement agencies throughout the state have made frequent and effective use of the recently-enacted vehicle impoundment provisions, impounding thousands of vehicles being operated by drivers with suspended or revoked licenses, or unlicensed drivers. . . . [¶] The bill's impoundment and release provisions are intended to address uncertainties and situations which have arisen since SB 1758 took effect in January 1995. Numerous financial institutions and rental agencies have reported their inability to reclaim vehicles they legally own but which are leased, financed or rented to others. Some law enforcement agencies have refused to release such vehicles before the end of the 30 days, resulting in significant impoundment charges to the legal owners when the registered owners subsequently do not reclaim the vehicles." (Assem. Floor Analysis, 3d reading of Sen. Bill No. 833 (1995–1996 Reg. Sess.) as amended Sept. 12, 1995, pp. 4–5.)

This evidence, which was presented to the trial court, establishes the rational basis for the legislative determination to treat rental agencies differently than private individuals. It shows that, after section 14602.6 had been in effect for several months, the Legislature was provided with information which led it to conclude that the financial impact of the impoundment provisions on rental car agencies was disproportionate to their culpability. As we have already discussed, the purpose of section 14602.6 is to punish and deter unlicensed driving. However, the rental agency would seldom if ever be the driver of an impounded vehicle. Further, an agency's control over who drives a rental car is obviously more limited than a private individual's control over his or her own car. Moreover, as the Attorney General points out, the financial consequences of impounding rental cars pursuant to this statute are felt not just by rental agencies but also by the State of California which benefits from this industry.

The trial court rejected the proposition that rental companies have less control over their vehicles than do private individuals, reasoning that such agencies are required by law to verify that persons who rent vehicles from

them are validly licensed. (See §§ 14608 & 14609.) But this requirement, which does not apply to private individuals, only reinforces our conclusion that there is a rational basis for the statutory classification. Once a vehicle is rented to a validly licensed customer, the agency cannot control that customer's behavior, which could well include losing his or her license and continuing to drive, or loaning the vehicle to an unlicensed driver.

The trial court also reasoned that economic considerations could not justify the distinct treatment of rental car agencies because, in the court's view, "to deprive the general public of their cars would clearly and rationally be at least as harmful to the economy as depriving car-rental companies of their cars." First, this statute does not deprive the "general public" of their cars; it provides for the impoundment of a vehicle driven by an unlicensed driver for a limited period of time. Second, the question is not whether the court subjectively believes that the consequences of this statute are more or less harmful to rental agencies than to private individuals. Rather, we ask whether the financial impact of the impoundment provisions on the rental agency industry and the California economy as a whole provides a rational basis for the legislative determination to provide a more streamlined procedure for agencies to retrieve impounded vehicles. The answer to this question is yes.

The trial court's personal disagreement with the Legislature's decision to treat rental car agencies differently than private individuals simply does not alter the fact that there is a rational basis for the distinction between rental agencies and other owners of impounded vehicles. Therefore, we reverse the trial court's finding that section 14602.6, on its face, violates the equal protection clause.

## C. *Section 23109.2*

Section 23109.2(a) authorizes a peace officer to arrest a person who participated in a motor vehicle speed contest. This statute further provides that "[a] motor vehicle so seized may be impounded for not more than 30 days."

The trial court found that section 23109.2(a) constitutes an unlawful delegation of legislative power in violation of the separation of powers doctrine. As noted above, the nondelegation doctrine is violated only when the legislative body "(1) leaves the resolution of fundamental policy issues to others or (2) fails to provide adequate direction for the implementation of that policy." (*Carson, supra,* 35 Cal.3d at p. 190.) Here, the trial court found that section 23109.2(a) is unconstitutional because the Legislature failed to provide any guidance for determining how long to impound a vehicle seized pursuant to this statute.

■ Regarding this issue, we focus again on the second prong of the nondelegation doctrine which, in this context, requires that the Legislature provide adequate direction for implementing its policy decision to deter the dangerous activities specified in this statute by impounding a vehicle that is used to engage in those activities. In addressing this question, we remain mindful of our obligation to construe statutes in a constitutional manner to the extent possible and to consider whether standards or safeguards for effective implementation of a legislative policy decision can be implied by the statutory purpose. (*People v. Wright, supra*, 30 Cal.3d at p. 713; *Wilkinson, supra*, 144 Cal.App.3d at p. 442.) In this regard, it is certainly appropriate, if not necessary, to "giv[e] narrow constructions to statutory delegations that might otherwise be thought to be unconstitutional" (*Mistretta v. United States, supra*, 488 U.S. at p. 374, fn. 7), and to favor a construction of a statute that avoids "open-ended grants" of power or authority. (*Industrial Union Dept. v. American Petroleum Institute* (1980) 448 U.S. 607, 646 [65 L.Ed.2d 1010, 100 S.Ct. 2844].)

We reiterate these important principles governing our review because our rejection of the trial court's conclusion that section 23109.2(a), on its face, violates the nondelegation doctrine stems from our fundamental disagreement with the construction of this statutory language which the trial court and the parties appear to have adopted. They all interpret the last sentence in this subsection, which provides that a vehicle "may be impounded for not more than 30 days," to mean that the impounding agency is free to determine how long, within that 30-day period, the vehicle will be held. This interpretation is neither compelled by the statutory language nor consistent with the foregoing principles governing our review.

The last sentence of section 23109.2(a) does not expressly authorize the impounding agency to use its own discretion to decide how long to impound a vehicle seized pursuant to this statute. Furthermore, this sentence appears in a subdivision which, when considered as a whole, unequivocally limits the power of the impounding agency by establishing a maximum period of impoundment. As we noted in our analysis of section 14602.6, establishing a maximum period of impoundment creates an important safeguard by limiting the authority of law enforcement and putting the public on notice of that maximum penalty. The fact that this subdivision limits rather than expands the discretion of the impounding agency strongly indicates to us that the Legislature did not intend that section 23109.2(a) be construed as giving the agency discretion to decide how long, within the 30-day period, an impounded vehicle will be held.

Viewing 23109.2(a) in the context of 23109.2 as a whole further reinforces our conclusion. This statute contains no mechanism comparable to the

mitigating circumstances inquiry which would require the agency to consider whether facts or circumstances reduce the culpability of the owner of the impounded vehicle. It does, however, identify situations in which a motor vehicle must be released prior to the expiration of the "impoundment period" described in section 23109.2(a). (See § 23109.2, subd. (c).) Thus, when viewed in context, the last sentence of section 23109.2(a) can reasonably be construed as a directive to impound a vehicle seized pursuant to this statute for 30 days *unless* one of the express statutory grounds for an earlier release is satisfied.

To the extent the last sentence of section 23109.2(a) is ambiguous, neither party offered extrinsic evidence of a legislative intent to confer discretion on agencies to decide the length of an impoundment period. We note, however, that section 23109.2 was amended in 2002 to effectuate changes not relevant here. (Stats. 2002, ch. 411.) The Legislative Counsel's Digest accompanying Senate Bill No. 1489, of which we take judicial notice, described existing law as providing, among other things, that "[a] vehicle impounded under these provisions is required to be impounded for 30 days, with specified exceptions." (Legis. Counsel's Dig., Sen. Bill No. 1489, 411 Stats. 2002 (2001–2002 Reg. Sess.).) This observation is consistent with and reinforces our interpretation of the last sentence of section 23109.2(a).

For these reasons, we find that section 23109.2(a) requires that a vehicle seized pursuant to this statute be impounded for 30 days unless of the grounds for early release that are expressly set forth in section 23109.2 is satisfied. The trial court's determination that section 23109.2(a) violates the nondelegation doctrine was based on an erroneous interpretation of this statute and must therefore be reversed.

D. *Attorney Fees*

The trial court awarded Samples attorney fees pursuant to section 1021.5 of the Code of Civil Procedure which states that a court may, under specified conditions, award attorney fees to "a successful party." Our reversal of the judgment establishes that Samples is not a successful party in this action and requires reversal of the attorney fees award without consideration of the Attorney General's specific objections to that order.

## IV. DISPOSITION

The judgment and the attorney fees order are reversed. Costs on appeal are awarded to appellant.

Kline, P. J., and Lambden, J., concurred.

A petition for a rehearing was denied January 29, 2007, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied May 9, 2007, S150370.