Filed 8/25/22  P. v. Baylor CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>TYREESE BAYLOR,<br><br>          Defendant and Appellant. | A163516<br><br>(City and County of San Francisco<br>Super. Ct. No. CT16020974) |

Defendant Tyreese Baylor was placed on probation after pleading guilty to first degree residential burglary.  He appeals from a trial court order requiring him to pay $60,000 in direct restitution to the burglary victim.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In 2016, Baylor and his cousin, Deandre Quinnine, were charged by complaint with felony counts of first degree residential burglary and grand theft.[1]  The first count arose from allegations that in July 2015, Baylor and Quinnine broke into the home of Y.Y., their elderly neighbor, and stole a

---

[1] The charges were brought under Penal Code sections 459 (burglary) and 487 (grand theft).  All further statutory references are to the Penal Code.

large amount of cash. It was also alleged under former section 12022.6, subdivision (a)(1) (former section 12022.6(a)(1)) that the amount stolen was more than $65,000. The second count arose from allegations that on a later occasion Baylor and Quinnine stole a tracker from the San Francisco Police Department.

The preliminary hearing was held over two days in March and May 2019. At the outset of the hearing, the trial court granted the prosecution's motion to dismiss the charge of grand theft. At the end of the hearing, the court found there was sufficient evidence to support the burglary charge but struck the enhancement under former section 12022.6(a)(1), because section 12022.6 was repealed effective January 1, 2019. (Stats. 2010, ch. 711, § 5.) Baylor and Quinnine were then charged by information with a single count of first degree residential burglary under section 459.

Baylor and the prosecution thereafter entered into a plea agreement. Under it, a new second count was added, which alleged second degree burglary based on the same facts supporting the first count. In accordance with the plea agreement, Baylor pleaded guilty to both counts, and in May 2020 the trial court placed him on probation for two years. The parties also stipulated that upon successfully completing 18 months of probation, Baylor could withdraw his plea to first degree burglary and move for that count's dismissal.

Several restitution hearings were scheduled and continued, and Baylor subpoenaed Y.Y. to appear and produce documentation of her claimed loss. The hearing was finally held in August 2021, by which time Y.Y. was in her late seventies. She did not appear, and the trial court proceeded with the hearing in her absence. Relying largely on her testimony at the preliminary

hearing, the court ordered Baylor to pay restitution in the amount of $60,000, for which Quinnine was found jointly and severally liable.[2]

## II.
## DISCUSSION

Baylor contends that the restitution order violated his constitutional rights. Specifically, he claims his rights to due process, compulsory process, and confrontation were violated because the trial court did not enforce Y.Y.'s subpoena and instead relied on her preliminary-hearing testimony. He also claims his right to equal protection was violated because unlike civil defendants facing possible money judgments, he had no right to depose witnesses or serve interrogatories. None of these arguments are persuasive.

### A. *The Governing Legal Standards*

Both the federal and California constitutions provide that no person shall be deprived of life, liberty, or property without due process of law or be denied equal protection of the law. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.) In addition, the Sixth Amendment to the federal Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." (U.S. Const., 6th Amend.)

Under our state constitution, victims are also afforded rights, and one of them is entitlement to restitution. (Cal. Const., art. 1, § 28, subd. (b)(13).)

---

[2] Earlier this year, Division Two of this court rejected Quinnine's appeal from the same restitution order. (*People v. Quinnine* (May 4, 2022, A163621) [nonpub. opn.].)

The right is elaborated upon in statute: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim . . . in an amount established by court order, based on the amount of loss claimed by the victim . . . or any showing to the court." (§ 1202.4, subd. (f).) The amount of restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(3).)

Courts have balanced the rights of defendants and victims in the context of criminal restitution hearings. In doing so, they "have repeatedly held that the defendant does not have a Sixth Amendment right of confrontation at the sentencing stage of a criminal prosecution." (*People v. Cain* (2000) 82 Cal.App.4th 81, 86; see *People v. Arbuckle* (1978) 22 Cal.3d 749, 754–755.) They have also held that the " 'scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited: " 'A defendant's due process rights are protected when [the defendant has] notice of the amount of restitution claimed . . . , and . . . has an opportunity to challenge the figures . . . at the sentencing hearing.' " ' " (*People v. Prosser* (2007) 157 Cal.App.4th 682, 692 (*Prosser*).)

"[A]s prima facie evidence of loss, [courts] may accept a property owner's statement made in the probation report about the value of stolen or damaged property." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543; see *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048.) Once a prima facie showing has been made, "the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*Prosser, supra,* 157 Cal.App.4th at p. 691.)

4

At bottom, trial courts are responsible for ensuring that the procedure employed to determine the amount of restitution is not fundamentally unfair. (*People v. Cain*, *supra*, 82 Cal.App.4th at p. 87.)  Still, they have "broad discretion in fixing the amount of restitution, and they may use any rational method, provided it is reasonably calculated to make the victim whole." (*People v. Hurtado* (2019) 35 Cal.App.5th 871, 878.)

An appellate court reviews a restitution order for an abuse of discretion.  (*People v. Hurtado*, *supra*, 35 Cal.App.5th at p. 878.)  " ' " ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found." ' " ' "  (*Prosser*, *supra*, 157 Cal.App.4th at p. 686.)

### B. Baylor's Restitution Hearing Was Fundamentally Fair.

#### 1. Additional facts

As we have said, the trial court proceeded with the restitution hearing notwithstanding Y.Y.'s failure to appear.  At the hearing, the court took judicial notice of Baylor's probation report and the preliminary-hearing transcript.  It also allowed Baylor to present the testimony of a defense investigator who spoke with Y.Y.

There were two sources of evidence of the amount of money stolen from Y.Y.  First, Baylor's probation report indicated that immediately after the crime, Y.Y. reported that $80,000 in cash was taken from her safe.  Second, the preliminary-hearing transcript contained Y.Y.'s testimony, which was translated from Cantonese, that over $65,000 was taken.  Specifically, Y.Y. testified that upon returning home from an appointment, she found items strewn over her bedroom floor and discovered her locked safe was opened and damaged.  Missing from the safe was $60,000 in cash she had organized, plus additional money inside a fabric bag.  She accumulated the money to pay for

5

home repairs, and she kept it in her safe, rather than in a bank account, to pay contractors. She estimated that a total of $100,000 in cash was taken from the safe, although she did not know the exact amount because much of the money in the fabric bag was contributed by her three sons at various times and in varying amounts.

Baylor objected to the preliminary-hearing transcript on the basis that he could not further cross-examine Y.Y., given her failure to comply with the subpoena. In overruling the objection, the trial court stated that although Baylor was "entitled to a fundamentally fair proceeding," he was "not entitled to cross-examination, [and was] not necessarily . . . entitled to evidence that meets the [E]vidence [C]ode standards." The court found that the proceedings were fundamentally fair because Y.Y. had testified at the preliminary hearing under oath, defense counsel had cross-examined her about her loss, and defense counsel had an incentive to examine her fully at that time because the allegation under former section 12022.6(a)(1) had not yet been dismissed. The court also noted that any documents that might have been provided pursuant to the subpoena were not likely to provide meaningful information, since Y.Y. testified that her sons gave her most of the money and it neither came from nor was deposited into a bank account.

The trial court acknowledged that Y.Y. gave different estimates of her loss, but it observed that she seemed certain the amount was at least $60,000. It found that her absence from the restitution hearing "cut against her credibility," but she was elderly and might not want to risk going to court during the pandemic. Ultimately, the court found her credible even though some of her testimony was imprecise, possibly due to a translation issue.

2. Analysis

The record demonstrates that Baylor's restitution hearing was fundamentally fair. Baylor had notice of the amount of cash Y.Y. claimed was stolen from her safe, and he had the opportunity to challenge that amount. Indeed, he exercised that opportunity by presenting the defense inspector's testimony that Y.Y. ultimately spent only about $3,000 for home repairs, which he argues made her estimated loss less credible. He also had the opportunity, which he did not exercise, to present his or Quinnine's testimony about the amount of money stolen. (See *Prosser*, *supra*, 157 Cal.App.4th at p. 691 ["If the thief has disposed of the property and is, like the victim, ill-poised to provide a detailed description or an appraisal, it is indeed awkward. But the situation is one of the thief's own making, and as between the victim and the thief, the equities favor the victim"].)

Baylor does not base his challenge to consideration of Y.Y.'s preliminary-hearing testimony on evidentiary rules, as he recognizes that the regular rules of evidence do not strictly apply in sentencing matters. (See *Prosser*, *supra*, 157 Cal.App.4th at p. 692 [hearsay statements may be considered if inherently reliable]; see also *People v. Foster* (1993) 14 Cal.App.4th 939, 947 [due process does not require court to " ' "draw sentencing information through the narrow net of courtroom evidence rules" ' "].) Instead, he claims he was denied his rights to compulsory process and to confront witnesses because the trial court, by failing to enforce Y.Y.'s subpoena, left him unable "to fully cross[-]examine [Y.Y.]." According to Baylor, he "never had a meaningful opportunity to resolve issues related to [Y.Y.'s] reliability" because the preliminary hearing's purpose was to consider whether there was probable cause for the burglary, not to establish "a fair

7

and reliable determination of the amount of loss sustained for restitution purposes."

We are not convinced. To begin with, a probation report's statement about a victim's loss alone may suffice to support an award of restitution. (*People v. Gemelli, supra,* 161 Cal.App.4th at p. 1543.) Here, Baylor does not challenge the probation report's statement that Y.Y. reported an $80,000 loss soon after the crime occurred. Furthermore, her preliminary-hearing testimony substantiated this evidence, confirming that at least $60,000 was taken from the safe. She was also cross-examined at length by Baylor's and Quinnine's attorneys, who asked her numerous questions about the stolen cash, including its location, its purpose, and its accumulation.

In short, given the evidence presented of the loss amount and the defense attorneys' considerable cross-examination of Y.Y. at the preliminary hearing, we cannot conclude that Baylor's restitution hearing was fundamentally unfair.

### C. *Baylor's Right to Equal Protection Was Not Violated.*

Finally, we turn to Baylor's equal protection claim, which we review de novo. (*Samples v. Brown* (2007) 146 Cal.App.4th 787, 799.) Baylor maintains that his right to equal protection was violated because there "is no rational reason to disallow a criminal defendant from seeking restitution information from a victim through the use of depositions and interrogatories which are allowable in a civil proceeding pursuant to the Code of Civil Procedure and the [California] Rules of Court."

We reject the argument for both procedural and substantive reasons. Procedurally, Baylor forfeited the argument. He fails to demonstrate that he ever sought to take Y.Y.'s deposition or serve her with interrogatories, much less claimed his right to equal protection was violated. (See *People v.*

8

*Famalaro* (2011) 52 Cal.4th 1, 40.)  Substantively, the argument lacks merit. Criminal defendants are not situated similarly to civil defendants for purposes of equal protection.  (*People v. Rountree* (2013) 56 Cal.4th 823, 863.) "Not giving criminal defendants the right to take depositions does not violate equal protection." (*Ibid.*)  Thus, we reject Baylor's claim that his right to equal protection was violated.

III.

DISPOSITION

The August 20, 2021 order requiring Baylor to pay restitution to Y.Y. is affirmed.

_____

Humes, P.J.

WE CONCUR:


_____

Margulies, J.


_____

Banke, J.


*People v. Baylor*  A163516