Filed 5/5/21

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT


(Sutter)

----


| | |
|---|---|
| GAVIN NEWSOM, as Governor, etc., | C093006 |
| Petitioner, | (Super. Ct. No. CVCS200912) |
| v. | |
| THE SUPERIOR COURT OF SUTTER COUNTY, | |
| Respondent; | |
| JAMES GALLAGHER et al., | |
| Real Parties in Interest. | |


ORIGINAL PROCEEDING in mandate.  Stay issued.  Petition granted with directions.  Sarah H. Heckman, Judge.

Xavier Becerra, Attorney General, Matthew Rodriquez, Acting Attorney General, Thomas S. Patterson, Assistant Attorney General, Benjamin M. Glickman, Jay C. Russell and John W. Killeen, Deputy Attorneys General, for Petitioner.

Aaron D. Silva, Chief Deputy Legislative Counsel and Benjamin R. Herzberger, Deputy Legislative Counsel, for Senator Tom Umberg and Assemblymember Marc Berman as Amici Curiae on behalf of Petitioner.

David A. Carrillo and Brandon V. Stracener for California Constitution Center as Amicus Curiae on behalf of Petitioner.

James R. Williams, County Counsel (Santa Clara), Hannah M. Kieschnick, Stephanie L. Safdi and Karun Tilak, Deputy County Counsel; Corrie Manning; and Jennifer Henning for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Petitioner.

Boersch & Illovsky and Kevin Calia for Secretary of State Alex Padilla as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

James Gallagher, in pro. per., and Kevin Kiley, in pro. per., for Real Parties in Interest.

Karin E. Schwab, County Counsel (Placer), Brett D. Holt, Chief Deputy County Counsel, Renju Jacob and Emily F. Taylor, Deputy County Counsel, for the County of Placer as Amicus Curiae on behalf of Real Parties in Interest.

Pacific Legal Foundation, Luke A. Wake and Daniel M. Ortner for Ghost Golf, Inc., Daryn Coleman, Sol y Luna Mexican Cuisine and Nieves Rubio as Amici Curiae on behalf of Real Parties in Interest.

Bell, McAndrews & Hiltachk, Thomas W. Hiltachk, Brian T. Hildretch and Katherine C. Jenkins for Senators Shannon Grove, Brian Dahle and Jim Nielsen, and Assemblymembers Marie Waldron, Megan Dahle, and Jordan Cunningham as Amici Curiae on behalf of Real Parties in Interest.

This petition for writ of mandate by Governor Gavin Newsom concerns the same parties and the same Executive Order No. N-67-20 (which we refer to as before as the "Executive Order") at issue in this court's decision in *Newsom v. Superior Court* (2020) 51 Cal.App.5th 1093 (*Newsom*). In that decision we granted the Governor's petition challenging a temporary restraining order suspending the Executive Order that the superior court issued in an expedited, "ex parte" proceeding. We held that there was no basis for the superior court to grant real parties' ex parte application at a hearing

2

conducted one day after the action was filed, without proper notice to the Governor or his appearance, and without the substantive showing required for an ex parte proceeding.

Following our decision in *Newsom*, the case was reassigned to a different judge who conducted a trial on documentary exhibits without live witnesses and entered a judgment granting declaratory relief that the Executive Order is void as unconstitutional and that the California Emergency Services Act (Gov. Code, § 8550 et seq. (Emergency Services Act))[1] does not authorize the Governor to issue an executive order that amends or makes statutory law. The court issued a permanent injunction prohibiting the Governor from exercising any powers under the Emergency Services Act "which amend, alter, or change existing statutory law or make new statutory law or legislative policy."

We will grant the Governor's petition and direct the superior court to dismiss as moot real parties' claim for declaratory relief that the Executive Order is void as an unconstitutional exercise of legislative power. The Executive Order was superseded by legislation and was directed only at the November 3, 2020 general election, which had occurred before the judgment was entered. However, the declaratory relief and accompanying permanent injunction regarding executive orders issued under the Emergency Services Act raise matters of great public concern regarding the Governor's orders in the ongoing COVID-19 pandemic emergency. The superior court erred in interpreting the Emergency Services Act to prohibit the Governor from issuing quasi-legislative orders in an emergency. We conclude the issuance of such orders did not constitute an unconstitutional delegation of legislative power. We will direct the superior court to vacate this portion of the judgment and enter a new and different judgment in favor of the Governor.

---

[1] All undesignated statutory references are to the Government Code.

3

## BACKGROUND

In *Newsom*, we set forth the background of the filing of this action: "In May [2020] the chairs of the Assembly and Senate committees that consider election-related matters prepared a formal letter to the Governor indicating they were working on legislation to ensure Californians could vote by mail in light of the emergency occasioned by COVID-19. The letter indicated the legislation would ensure adequate ballot dropoff locations and regulate safe in-person voting while ensuring a minimum standard of one polling location per 10,000 voters open for four days statewide. The committee chairs encouraged the Governor to issue an executive order allowing all Californians to vote by mail, noting: 'three-quarters of California voters already receive a mail ballot. Let's mail a ballot to the rest.'

"The Governor issued Executive Order No. N-64-20 on May 8, 2020, which required all voters to be provided vote-by-mail ballots. That order affirmed, however, that the administration continued to work 'in partnership with the Secretary of State and the Legislature on requirements for in-person voting opportunities and how other details of the November election will be implemented' and '[n]othing in this Order is intended, or shall be construed, to limit the enactment of legislation on that subject.'

"On June 3, 2020, the Governor signed the order at issue here, Executive Order No. N-67-20, which will be referenced throughout as simply the 'Executive Order.' The Executive Order affirms that all counties would mail eligible voters vote-by-mail ballots and provides for the use the Secretary of State's vote-by-mail ballot tracking system. It also provides additional terms related to the number and operation of polling places (including opening at least one polling place per 10,000 registered voters for four days) and vote-by-mail ballot dropoff locations, and it states in-person public participation in public meetings or workshops would not be required. The Executive Order identifies statutory provisions that are displaced pursuant to its provisions. But it also affirms the administration is 'working in partnership' with the Legislature and Secretary of State and

4

'[n]othing in this Order is intended, or shall be construed, to limit in any way the enactment of legislation concerning the November 3, 2020 General Election.'

"At the time the Governor issued the Executive Order, two bills pending in the Legislature addressed the substance of the Governor's Executive Order:  Assembly Bill No. 860 (2019-2020 Reg. Sess.), which would ensure all California voters were provided ballots in advance of the election to vote by mail, and Senate Bill No. 423 (2019-2020 Reg. Sess.), which would govern those remaining aspects of the election that are yet to occur." (*Newsom, supra*, 51 Cal.App.5th at pp. 1095-1097, fn. omitted.)

On June 11, 2020, real parties filed a complaint for declaratory and injunctive relief seeking a declaratory judgment that the Executive Order "is null and void as it is an unconstitutional exercise of legislative powers reserved only to the Legislature, nor is it a permitted action" under the Emergency Services Act and an injunction against the Governor implementing the Executive Order.  The complaint also sought an injunction against the Governor "further exercising any legislative powers in violation of the California Constitution and applicable statute, specifically from unilaterally amending, altering, or changing existing statutory law or making new statutory law."

On June 12, 2020, the superior court granted real parties' ex parte application for a temporary restraining order suspending the Executive Order and issued an order to show cause why the Governor should not be enjoined from implementing the Executive Order and exercising legislative power to amend, alter or change existing statutory law or make new statutory law.

On June 18, 2020, the Governor signed Assembly Bill No. 860 (2019-2020 Reg. Sess.), which took effect immediately as an urgency statute.  Assembly Bill No. 860 declared that the general election to be held in November 3, 2020, raised health concerns about in-person voting due to the COVID-19 pandemic.  The statute required county election officials to mail a ballot to every registered voter for the November 3, 2020 election, permit voters to cast a ballot using a certified remote accessible vote-by-mail

system in the election, and use the Secretary of State's system or its equivalent to allow voters to track their votes. The act also made changes to certain deadlines associated with the November 3, 2020 election. (Stats. 2020, ch. 860, §§1-8.)

On July 10, 2020, in *Newsom*, this court issued a peremptory writ of mandate directing the superior court to vacate its order granting real parties' ex parte application and issue an order denying it. (*Newsom, supra*, 51 Cal.App.5th at p. 1100.)

On August 6, 2020, the Governor approved Senate Bill No. 423 (2019-2020 Reg. Sess.), also as an urgency statute effective immediately. Senate Bill No. 423 shortened the time for vote centers to open before the November 3, 2020 election, allowed election officials to establish consolidated precinct boards for multiple precincts in the same polling place, and provided for a number of other measures for a safe election. The declared purpose of Senate Bill No. 423 was to provide safe in-person voting opportunities for those who need them despite the vote-by-mail mandates of the Executive Order and Assembly Bill No. 860. (Stats. 2020, ch. 31, §§1-4.)

In September 2020, real parties and the Governor filed motions for judgment on the pleadings, both of which the superior court denied.

On September 30, 2020, the Governor issued a news release that included the following statement: "[T]he Legislature passed a number of bills that build on the Governor's executive actions in response to COVID-19. Some of these bills replace certain executive orders entirely. Legislation has superseded the following executive orders, which have no further force or effect as of that legislation's effective date: [¶] . . . [¶] Executive Order N-64-20 and Executive Order N-67-20 (elections) -- superseded by AB 860 and SB 423."

On October 21, 2020, the superior conducted a trial in which stipulated documentary evidence was introduced but no witnesses called.

On November 13, 2020, the court issued a statement of decision addressing five issues. First, the court found that the case was not moot because plaintiffs requested

6

declaratory relief beyond the validity of the Executive Order. Plaintiffs contended that the California Constitution and the Emergency Services Act did not permit the Governor to issue orders that amended or made new statutory law. The Governor maintained that the Emergency Services Act's grant of authority to exercise the state's police power to issue orders as necessary in an emergency authorized amending existing statutory law. The court determined that this "critically important" controversy was for the judiciary to resolve, given that the COVID-19 emergency continued and the Governor "has issued more than 50 different executive orders changing numerous California statutes since the state of emergency was declared." The superior court also found that the Executive Order had not been formally rescinded or entirely superseded by subsequent legislation.

Second, the superior court determined that the Emergency Services Act is not unconstitutional. The court analyzed sections 8567, 8571 and 8627 of the statute relied on by the Governor. The court first concluded that the plain language of sections 8567 and 8571 does not authorize the Governor to make or amend statutes. As for section 8627, the court noted that this provision "gives the Governor authority over state agencies and in connection therewith to exercise all 'police powers' vested in the state by the Constitution and laws of California." The court reasoned that section 8627 was qualified by its reference to the Governor's power under section 8567 to issue " 'orders and regulations,' " indicating the Governor had no power to make or amend statutory law. Further, the superior court declined to interpret the term " 'police powers' in a manner which violates the separation of powers under the California Constitution."

Third, applying these principles, the superior court concluded that the Executive Order amended provisions of the Elections Code and exceeded the Governor's authority under the Emergency Services Act. The court rejected the Governor's contention that the separation of powers was preserved by the Legislature's ability to terminate the state of emergency—which would have the effect of terminating any change in statutory law by executive order—as "not a realistic or effective manner to address an unconstitutional

7

exercise of power by a governor under the [Emergency Services Act] and does not preserve the separation of powers intended by the Constitution."

Fourth, the superior court determined that declaratory relief that the Emergency Services Act does not give the Governor power to amend or make statutory law was a matter of broad public interest particularly suited to determination by judicial declaration. The court found and declared that the Executive Order is void as an unconstitutional exercise of legislative power and the Emergency Services Act does not authorize the Governor to amend or make statutory law.

Fifth, the superior court found that a permanent injunction was warranted to prohibit the Governor from issuing executive orders that amend or make statutory laws. The court noted that the Governor had issued "a multitude of executive orders under the purported authority of the [Emergency Services Act], many of which have amended statutory law." Further, the court observed the state of emergency declared by the Governor due to the COVID-19 pandemic continues indefinitely and the Governor "continues to issue executive orders which create legislative policy." The court also reasoned that the amendments to the Elections Code in Assembly Bill No. 860 and Senate Bill No. 423 pertained only to the November 2, 2020 election and there was a reasonable likelihood that a special election would occur in 2021. In sum, the court was persuaded by the evidence the Governor would continue to issue executive orders amending statutes under the Emergency Services Act in violation of the California Constitution, which would lead to a multiplicity of lawsuits unless restrained by a permanent injunction. The court found good cause to issue a permanent injunction prohibiting the Governor from issuing an executive order under the Emergency Services Act "which amends, alters, or changes existing statutory law or makes new statutory law or legislative policy."

On November 16, 2020, the Governor filed a petition for writ of mandate and requested an immediate stay of the permanent injunction. We issued a stay order the next day.

On November 25, 2020, the superior court entered judgment in accordance with its statement of decision (but added a proviso that the Governor "may suspend statutes consistent with" section 8571).

The previous day this court had stayed any further proceedings in the superior court and issued an alternative writ of mandate.

## DISCUSSION

### *Mootness*

By the time the superior court issued the statement of decision on November 13, 2020, real parties' claim for declaratory relief that the Executive Order was null and void as an unconstitutional exercise of legislative authority was unquestionably moot.

" '[A]n appeal is moot if " 'the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief.' " ' [Citations.]" (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2016) 2 Cal.App.5th 586, 590.) "Subsequent legislation can render a pending appeal moot." (*van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 560; see also *Equi v. San Francisco* (1936) 13 Cal.App.2d 140, 141-142; *Bell v. Board of Supervisors* (1976) 55 Cal.App.3d 629, 636.) "It is well settled that an appellate court will decide only actual controversies. Consistent therewith, it has been said that an action which originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events." (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 (*Finnie*); see also *Lenahan v. City of Los Angeles* (1939) 14 Cal.2d 128, 132 (*Lenahan*).)

This court observed in *Newsom* that the parties agreed "the issue of whether the Governor's Executive Order exceeds his authority" was made "partially but not entirely

9

moot" by Assembly Bill No. 860 and the remaining issues "may likewise become moot if Senate Bill No. 423 (2019-20120 Reg. Sess.) also passes and is signed by the Governor." (*Newsom, supra*, 51 Cal.App.5th at p. 1100.) The Governor subsequently declared that Assembly Bill No. 860 and Senate Bill No. 423 superseded the Executive Order. However, the superior court maintained that the Executive Order had not been "formally rescinded" and "remained in effect requiring all county election officials to use the Secretary of State's barcode tracking system for all mail ballots and altered the statutorily required outreach in Voter's Choice Act counties to provide noticed, public meetings allowing for public comment on voting access for California voters with disabilities or limited English proficiency." Nonetheless, the superior court did not disagree that the Executive Order was directed only at the November 3, 2020 election, which has now been run in accordance with the vote-by-mail and other provisions of the Executive Order. Thus, declaring the Executive Order null and void had no remedial effect whatsoever at the time the superior court issued its statement of decision and judgment and was therefore moot. (See *Lenahan, supra*, 14 Cal.2d at pp. 133-134; *Finnie, supra*, 199 Cal.App.3d at pp. 10-11.)

By contrast, the superior court's declaratory relief order that the Emergency Services Act does not give the Governor authority to make or amend statutory law by executive order, and the permanent injunction prohibiting the Governor from doing so was not directed at the Executive Order but any order issued under the Emergency Services Act. In particular, the declaratory relief order and permanent injunction apply to the Governor's orders issued in connection with the ongoing COVID-19 state of emergency that the Governor declared in March 2020. The superior court referred to, but did not specifically identify, the "50 different executive orders changing numerous California statutes [issued] since the state of emergency was declared" in the statement of decision. However, the court cited plaintiffs' exhibit offered as an "[o]verview" of the Governor's executive action since the COVID-19 state of emergency was declared. The

10

exhibit listed orders the Governor issued and statutes affected or changed by executive orders, many of which are still in effect.

Thus, the superior court's declaratory relief order and permanent injunction may govern existing and future emergency executive orders and are not moot. (See *California Charter Schools Assn. v. Los Angeles Unified School Dist.* (2015) 60 Cal.4th 1221, 1233-1234 (*California Charter Schools*).) Moreover, this court has " 'discretion to decide a case which, although technically moot, poses an issue of broad public interest that is likely to recur.' " (*Malaga County Water Dist. v. Central Valley Regional Water Quality Control Bd.* (2020) 58 Cal.App.5th 396, 409.) Given that the COVID-19 crisis is not over and the efforts to combat it are of statewide concern, there can be no doubt that this appeal falls within our discretion. (See *Brown v. Chiang* (2011) 198 Cal.App.4th 1203, 1219; *California Medical Assn. v. Brian* (1973) 30 Cal.App.3d 637, 650.)

We are mindful that, "[i]n passing judgment on cases requesting declaratory relief, we decide only actual controversies and refrain from issuing advisory opinions." (*California Charter Schools, supra*, 60 Cal.4th at p. 1234; *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.) However, we conclude there is an actual controversy regarding the scope of the Governor's authority to issue and implement executive orders under the Emergency Services Act, which the Governor clearly intends to continue to do during the COVID-19 state of emergency. (See *Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 886.)

*Section 8627 Is Not an Unconstitutional Delegation of Legislative Power*

The superior court concluded that the Emergency Services Act did not authorize the Governor to issue an executive order that amends or makes statutory law. In doing so, the court declined to reach plaintiffs' argument that if the Emergency Services Act granted the Governor the power to amend statutory law during an emergency, the act

11

"would be an unconstitutional delegation of power to legislate in violation of the separation of powers."

The court relied on the rule that " 'statutes are to be so construed, if their language permits, as to render them valid and constitutional rather than invalid and unconstitutional.' " This rule of statutory interpretation, called the canon of constitutional doubt, applies to *ambiguous* statutes, i.e., statutes reasonably susceptible of two interpretations.[2] (*California Chamber of Commerce v. State Air Resources Bd., supra*, 10 Cal.App.5th at pp. 630-631; see also *City of Los Angeles v. Belridge Oil Co.* (1954) 42 Cal.2d 823, 832; *Siskiyou County Farm Bureau v. Department of Fish & Wildlife* (2015) 237 Cal.App.4th 411, 445.) In that circumstance, " ' "the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable." ' " (*Harrott v. County of Kings* (2001) 25 Cal.4th 1138, 1153; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1373.) But, in this instance as we explain, the court erred in applying the canon "because there was no ambiguity to resolve" in section 8627. (*Siskiyou County Farm Bureau, supra*, at p. 445; *Gutierrez, supra*, at p. 1373 ["the canon 'is qualified by the proposition that "avoidance of a difficulty will not be pressed to the point of disingenuous evasion" ' "].)

That said, we agree that two out of the three provisions of the Emergency Services Act the court examined do not by their terms refer to the Governor's powers in an emergency as including amending or making law.

---

[2] Real parties refer to the "canon of constitutional avoidance," which is distinct from the constitutional doubt canon. Under the "constitutional *avoidance* doctrine . . . it is often deemed prudent to address a statutory or other ground to avoid reaching a constitutional ground." (*California Chamber of Commerce v. State Air Resources Bd.* (2017) 10 Cal.App.5th 604, 631, fn. 19.) Under the doctrine, as well as the canon, "a statute will be interpreted to avoid serious constitutional questions *if such an interpretation is fairly possible.*" (*People v. Buza* (2018) 4 Cal.5th 658, 682, italics added.)

12

In pertinent part, section 8567, subdivision (a), provides that "[t]he Governor may make, amend, and rescind orders and regulations necessary to carry out the provisions of this chapter" and such "orders and regulations shall have the force and effect of law." This language does not refer to the Governor making or amending "law" but rather distinguishes "orders and regulations" from "law" by stating that the former "shall have the force and effect of law."

Section 8571 provides in pertinent part that during "a state of emergency the Governor may suspend any regulatory statute, or statute prescribing the procedure for the conduct of state business, or the orders, rules, or regulations of any state agency . . . where the Governor determines and declares that strict compliance with any statute, order, rule, or regulation would in any way prevent, hinder, or delay the mitigation of the effects of the emergency." The Governor points out the absurdity of interpreting section 8571 as limited to suspending statutes whole cloth without allowing the Governor to alter them or replace them with orders containing requirements tailored to the emergency. Nonetheless, the phrasing of section 8571 that the Governor may "suspend" a statute where "strict compliance" with the statute would interfere with mitigating the emergency is clear that this provision of the Emergency Services Act is addressed to the Governor's negative power to suspend unhelpful statutes in an emergency, not an affirmative power to create helpful ones.

In contradistinction, section 8627 provides in full: "During a state of emergency the Governor shall, to the extent he deems necessary, have complete authority over all agencies of the state government and the right to exercise within the area designated all police power vested in the state by the Constitution and laws of the State of California in order to effectuate the purposes of this chapter. In exercise thereof, he shall promulgate, issue, and enforce such orders and regulations as he deems necessary, in accordance with the provisions of Section 8567." Rather than limit the reach of section 8627 as the superior court concluded, we interpret the reference to section 8567 in section 8627

13

merely as requiring the Governor to comply with the procedure specified in section 8567, i.e., that the Governor's emergency orders be widely publicized before issuance, be in writing, take effect immediately upon issuance, and terminate when the state of emergency is terminated. (§ 8567, subds. (a), (b).)

While the superior court attempted to interpret section 8627 to exclude any grant of authority to the Governor to issue quasi-legislative orders, "police power" as exercised is generally the power to legislate.[3] " 'The police power is the authority to enact laws to promote the public health, safety, morals and general welfare.' " (*Goldbaum v. Regents of University of California* (2011) 191 Cal.App.4th 703, 712; see also *Berman v. Parker* (1954) 348 U.S. 26, 31-32 [99 L.Ed. 27] ["all the legislative powers which a state may exercise over its affairs" is "what traditionally has been known as the police power"]; *Bond v. United States* (2014) 572 U.S. 844, 854 [189 L.Ed.2d 1]; *Massingill v. Department of Food & Agriculture* (2002) 102 Cal.App.4th 498, 504; *Max Factor & Co. v. Kunsman* (1936) 5 Cal.2d 446, 459-460.)

Accordingly, the plain language of section 8627 giving the executive the state's "police power," i.e., quasi-legislative power, in an emergency raises the issue whether the statute violates the constitutional separation of powers by delegating such authority to the Governor. We review this issue de novo. (*Samples v. Brown* (2007) 146 Cal.App.4th 787, 799 (*Samples*).)

In *People v. Wright* (1982) 30 Cal.3d 705 (*Wright*), the California Supreme Court articulated the applicable principles: "An unconstitutional delegation of legislative power occurs when the Legislature confers upon an administrative agency unrestricted authority

---

[3] While we interpret section 8571 not to refer to affirmative quasi-legislative power, such power "usually concerns the adoption of regulations but it can also involve other legislative-type action such as the suspension of existing statutes." Asimow et al., Cal. Practice Guide: Administrative Law (The Rutter Group 2020) ¶ 2:30, citing *Salmon Trollers Marketing Assn. v. Fullerton* (1981) 124 Cal.App.3d 291, 301-302.)

14

to make fundamental policy decisions.  [Citations.]  'This doctrine rests upon the premise that the legislative body must itself effectively resolve the truly fundamental issues.  It cannot escape responsibility by explicitly delegating that function to others or by failing to establish an effective mechanism to assure the proper implementation of its policy decisions.'  [Citation.]  [¶]  The doctrine prohibiting delegations of legislative power does not invalidate reasonable grants of power to an administrative agency, when suitable safeguards are established to guide the power's use and to protect against misuse.  [Citations.]  The Legislature must make the fundamental policy determinations, but after declaring the legislative goals and establishing a yardstick guiding the administrator, it may authorize the administrator to adopt rules and regulations to promote the purposes of the legislation and carry it into effect.  [Citations.]"  (*Id.* at pp. 712-713.)

In *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th 1118 (*Gerawan*), the court said:  " '[A]lthough it is charged with the formulation of policy,' the Legislature 'properly may delegate some quasi-legislative or rulemaking authority.'  [Citation.]  'For the most part, delegation of quasi-legislative authority . . . is not considered an unconstitutional abdication of legislative power.'  [Citation.]  'The doctrine prohibiting delegations of legislative power does not invalidate reasonable grants of power to an administrative agency, when suitable safeguards are established to guide the power's use and to protect against misuse.'  [Citation.]  Accordingly, '[a]n unconstitutional delegation of authority occurs only when a legislative body (1) leaves the resolution of fundamental policy issues to others or (2) fails to provide adequate direction for the implementation of that policy.'  [Citations.]"  (*Id.* at pp. 1146-1147, quoting *Carson Mobilehome Park Owners' Assn. v. City of Carson* (1983) 35 Cal.3d 184, 190; see also *Sims v. Kernan* (2018) 30 Cal.App.5th 105, 110 (*Sims*).)

"Only in the event of a total abdication of power, through failure either to render basic policy decisions or to assure that they are implemented as made, will this court intrude on legislative enactment because it is an 'unlawful delegation' . . . ."  (*Kugler v.*

15

*Yocum* (1968) 69 Cal.2d 371, 384 (*Kugler*); *Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 816 ["An unconstitutional delegation of power occurs when the Legislature confers upon an administrative agency unrestricted authority to make fundamental policy determinations"].)

Thus, the Legislature does not unconstitutionally delegate legislative power when the statute provides standards to direct implementation of legislative policy. (*Gerawan, supra*, 3 Cal.5th at p. 1148.) Here, section 8627 does not set forth express standards. However, "standards for administrative application of a statute need not be expressly set forth; they may be implied by the statutory purpose." (*Wright, supra*, 30 Cal.3d at p. 713, citing *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 168 (*Birkenfeld*); *Sims, supra*, 30 Cal.App.5th at p. 114; 7 Witkin, Summary of Cal. Law (11th ed. 2017) Constitutional Law, § 191; see also *Samples, supra*, 146 Cal.App.4th at p. 805 ["The requisite legislative guidance need not take the form of express standards"]; *Monsanto Co. v. Office of Environmental Health Hazard Assessment* (2018) 22 Cal.App.5th 534, 560 (*Monsanto*) [statutory scheme itself need not provide standards and "the lack of specific formulas regarding how to implement a policy will not render a statutory scheme unconstitutional"].)

The purpose of the Emergency Services Act does furnish standards to guide implementation of section 8627. As the California Supreme Court explained, "[o]ne of the primary purposes of the [Emergency Services Act] is to ensure that 'all emergency services functions' of the State and local governments, the federal government, and 'private agencies of every type,' 'be coordinated . . . to the end that the most effective use be made of all manpower, resources, and facilities for dealing with any emergency that may occur.' (Gov. Code, § 8550.) To further that end, the Governor is charged with the responsibility to coordinate the emergency plans and programs of all local agencies, 'such plans and programs to be integrated into and coordinated with the State Emergency Plan and the plans and programs of the federal government and of other states to the

fullest possible extent.'  (Gov. Code, § 8569.)"  (*Macias v. State of California* (1995) 10 Cal.4th 844, 854; see also *Martin v. Municipal Court* (1983) 148 Cal.App.3d 693, 696 [the Emergency Services Act "recognizes and responds to a fundamental role of government to provide broad state services in the event of emergencies resulting from conditions of disaster or extreme peril to life, property and the resources of the state," and "confers broad powers on the Governor to deal with emergencies"].)

Thus, in issuing orders under section 8627, the Governor is charged by the Emergency Services Act with the responsibility to provide a coordinated response to the emergency.  This statutory purpose while broad gives the Governor sufficient guidance, i.e., to issue orders that further a coordinated emergency response.  (See *Wright, supra*, 30 Cal.3d at pp. 712-713 [legislative direction to Judicial Council to adopt rules establishing criteria for imposing upper or lower terms in determinate sentencing to promote "uniformity" provided sufficient standard]; *Sims, supra*, 30 Cal.App.5th at pp. 114-115 [in developing lethal injection protocol, Department of Corrections and Rehabilitation received adequate guidance from purpose of lethal injection statute to bring state into compliance with Eighth Amendment prohibition on inflicting unnecessary pain or lingering death]; see also *Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 510 ["[A] general welfare standard is a sufficient guideline to enable an agency to act constitutionally"].)  Moreover, the requirement of particularized standards delimiting the specific orders that the Governor may issue is antithetical to the purpose of the Emergency Services Act to empower the Governor to deal with the exigencies of widely differing emergencies in California from wildfires to floods to a pandemic.  (See *Birkenfeld, supra*, 17 Cal.3d at p. 168 [" 'The rule that the statute must provide a yardstick to define the powers of the executive or administrative officer is easy to state but rather hard to apply.  Probably the best that can be done is to state that the yardstick must be as definite as the exigencies of the particular problem permit' "].)

17

In any event, of greater significance than "standards" is the requirement that legislation provide "safeguards" against the arbitrary exercise of quasi-legislative authority. In *Kugler*, the court said that "[t]he requirement for 'standards' is but one method for the effective implementation of the legislative policy decision; the requirement possess no sacrosanct quality in itself so long as its purpose may otherwise be assured." (*Kugler, supra*, 69 Cal.2d at p. 381.) " 'The need is usually not for standards but for safeguards. . . . [T]he most perceptive courts are motivated much more by the degree of protection against arbitrariness than by the doctrine about standards . . . .' " (*Ibid.*; see also *Samples, supra*, 146 Cal.App.4th at pp. 805-806.) Such safeguards may "derive from the statutory scheme itself." (*Monsanto, supra*, 22 Cal.App.5th at p. 558.)

Here, an important safeguard is set forth in the Emergency Services Act. Section 8629 provides: "The Governor shall proclaim the termination of a state of emergency at the earliest possible date that conditions warrant. All of the powers granted the Governor by this chapter with respect to a state of emergency shall terminate when the state of emergency has been terminated by proclamation of the Governor or by concurrent resolution of the Legislature declaring it at an end." As discussed, section 8567 provides that "[w]henever the state of war or state of emergency has been terminated, the orders and regulations shall be of no further force or effect." (§ 8567, subd. (b).) The Governor's obligation under the Emergency Services Act to terminate the emergency and thereby nullify orders issued under his emergency powers as soon as conditions warrant, as well the Legislature's authority to terminate the emergency at any time with the same effect, provides a safeguard for the delegation of quasi-legislative authority in section 8627.

We find instructive the decisions of federal courts interpreting the International Emergency Economic Powers Act (IEEPA), 50 United States Code section 1701 et seq., finding that Congress's power to terminate a presidential declaration of an emergency

18

provides a sufficient safeguard such that the statute is not an unconstitutional delegation of legislative authority. IEEPA gives the President the power to a declare a national emergency regarding foreign threats and issue orders and regulations restricting economic activity, violation of which is punishable by civil and criminal penalties. (*Kashani v. Tsann Kuen China Enterprise Co.* (2004) 118 Cal.App.4th 531, 539.) For example, orders and regulations issued under IEEPA "prohibit any United States person from engaging in any transaction, directly or indirectly, relating to the exportation, reexportation, sale, or supply of goods, technology, or services to Iran or the Government of Iran." (*Kashani*, at p. 539.) In *United States v. Mirza* (5th Cir. 2011) 454 Fed.Appx. 249, the Fifth Circuit rejected an unconstitutional delegation challenge to IEEPA noting that the statute provides for "limitations on the President's power," including "the power granted to the President by the IEEPA can be eliminated by Congress's termination of the declaration of emergency." (*Mirza*, at p. 256; see also *United States v. Dhafir* (2nd Cir. 2006) 461 F.3d. 211, 217 [IEEPA is not an unconstitutional delegation to the President to define criminal conduct for unlimited time once national emergency is declared because "Congress can terminate the President's declaration of emergency"].)

Consistent with this authority, the Kentucky Supreme Court upheld its governor's declaration of state of emergency regarding the COVID-19 pandemic and issuance of orders and regulation to address the disease. (*Beshear v. Acree* (Ky. 2020) 615 S.W.3d 780.) The court rejected the contention that the statute under which the governor declared an emergency was an unconstitutional delegation of authority. (*Id.* at pp. 805-813.) The court enumerated "procedural safeguards to prevent abuses," all of which are present in the Emergency Services Act, i.e., written orders and regulations, public notice, and the requirement that the governor state when the emergency has ceased and provision for the legislature to make that determination if the governor does not. (*Beshear, supra*, at pp. 811-812.)

Similarly, in *Friends of Danny DeVito v. Wolf* (Pa. 2020) 227 A.3d 872, another case challenging a governor's orders issued to deal with the COVID-19 emergency, the Pennsylvania Supreme Court noted that "[a]s a counterbalance to the exercise of the broad powers granted to the Governor, the Emergency Code provides that the General Assembly by concurrent resolution may terminate a state of emergency at any time." (*Id.* at p. 886; see also *Wolf v. Scarnati* (Pa. 2020) 233 A.3d 679, 711 ["the National Governors Association 'characterizes the ability of a legislature to intervene to terminate a declaration of a state of emergency as a "limitation on emergency powers" ' "] (conc. & dis. opn. of Dougherty, J.).)

Real parties argue the more apposite authority is *In re Certified Questions from the United States District Court, Western District Court of Michigan, Southern Division* (Mich. Oct. 2, 2020, No. 161492) ___ N.W.2d ___, [2020 WL 5877599]. In that case, the Supreme Court of Michigan examined a statute giving the governor power to declare a state of emergency and promulgate orders, rules and regulations to bring the emergency under control, which would cease to have effect when the governor declared that the emergency no longer existed. (*Id.* at p. *9.) The court considered both the subject matter and the duration of the emergency powers conferred on the governor in determining whether the nondelegation doctrine was satisfied. (*Id.* at p. *15.) The court interpreted the statute to be "of indefinite duration." (*Id.* at p. *16.) The court said, "the state's legislative authority, including its police powers, may conceivably be delegated to the state's executive authority for an indefinite period." (*Ibid.*) The court concluded the statute's "expansiveness, its indefinite duration, and its inadequate standards" were insufficient to sustain the delegation. (*Id.* at p. *18.)

By contrast, the Emergency Services Act is not a statute of indefinite duration. Unlike the Michigan statute, the Emergency Services Act obligates the governor to declare the state of emergency terminated as soon as conditions warrant, and, more significantly, empowers the Legislature to declare the emergency terminated. This

critical difference renders *Certified Questions* of little aid in evaluating the application of the nondelegation doctrine to the Emergency Services Act.

We conclude the Emergency Services Act, and specifically section 8627 of the Emergency Services Act, is not an unconstitutional delegation of legislative power.

## DISPOSITION

Let a peremptory writ of mandate issue directing Sutter County Superior Court to dismiss as moot the portion of the judgment awarding declaratory relief that the Executive Order is null and void. The superior court is further directed to vacate the remainder of the judgment and enter a new and different judgment in favor of the Governor. The alternative writ is discharged. The stay previously issued by this court on November 24, 2020, will be vacated upon finality of this opinion. The Governor shall recover his costs in this proceeding. (Cal. Rules of Court, rule 8.493.)


                                              /s/
                                       RAYE, P.J.


We concur:


   /s/
ROBIE, J.


   /s/
RENNER, J.